Bubke, J.
 

 Three parcels of land, the subject of the two claims herein, were located on the approach to the Thousand Island Bridge and were taken by the State for highway and bridge approach purposes. Before the taking, the entire property, of which these parcels were a part, covered some 80 acres in a roughly rectangular shape running on a north-south axis, with its western boundary parallel to the bridge approach and the bridge itself. The parcels taken, totaling some 2.8 acres in the extreme southwestern corner of the property, included a
 
 *154
 
 frontage of some 200 feet on the east side of the bridge approach and were appropriated without right of access to the bridge approach. There were structural improvements on the northwestern portion of the property and its northern boundary fronted on the St. Lawrence River. The remaining acreage, including the land immediately to the east of the appropriated parcels, was unimproved. Both prior to and after the taking, there was access to the remaining property by means of a road to the west of the bridge approach and parallel to it which ran in a northerly direction and intersected with another road which ran easterly under the bridge and continued part of the way onto claimants’ property in the vicinity of a residence and barn. At the trial, the parties stipulated that there was legal and physical access to the subject property both before and after the taking by means of the road described above.
 

 The claimants ’ expert appraiser testified that the highest and best use of the subject property was that of commercial and residential development and that, because the remaining access was inadequate for such development, the remaining property had suffered consequential damages. He testified to a before-taking value of $132,500, an after-taking value of $79,900 and total damages of $52,600, equally divided between direct and consequential damages. The State’s expert testified that the highest and best use of the subject property was residential with limited developmental potential. He testified that the loss of direct access damaged the developmental potential of the remaining land east of the appropriated parcels and, therefore, also found consequential damages. He found a before-taking value of $57,300 and total damages of $33,300, of which $16,300 was direct and $17,000 was consequential.
 

 The Court of Claims in its decision found a before-taking value of $80,000 and an after-taking value of $40,000, with the total damages of $40,000 being equally divided between direct and consequential. The consequential damages were allocated $16,000 to one claim, and $4,000 to the second claim. In the Appellate Division, direct damages were not disputed, but the State contended that, on the law and on the facts, the award of consequential damages was improper. The Appellate Division held that there was no basis in the record to support the award of consequential damages. Citing our decision in
 
 Selig
 
 
 *155
 
 v.
 
 State of New York
 
 (10 N Y 2d 34) and Appellate Division cases, it held that, since access was not destroyed or rendered unsuitable and insufficient, the resulting circuity of access was noncompensable and, therefore, struck from the judgment the awards for consequential damages.
 

 Claimants ’ appeal from that determination revolves upon the rather murky distinction between access which is merely
 
 “
 
 circuitous ” and, therefore, insufficient as a basis for consequential damages and that which is “ unsuitable ” and, therefore, compensable. It is beyond dispute that mere circuity of access does not constitute a basis for an award of consequential damages
 
 (Bopp
 
 v.
 
 State of New York,
 
 19 N Y 2d 368, 372;
 
 Selig
 
 v.
 
 State of New York,
 
 10 N Y 2d 34,
 
 supra).
 
 But, this legal proposition is controlling in a particular case only if, as a question of fact, the access involved is shown to be
 
 merely
 
 circuitous
 
 (Laken Realty Corp.
 
 v.
 
 State of New York,
 
 29 A D 2d 1027;
 
 Red Apple Rest
 
 v.
 
 State of New York,
 
 27 A D 2d 417). If the facts established at the trial of a claim show that the access involved is more than merely circuitous so that it can be characterized as
 
 “
 
 unsuitable,” compensability follows. The trial court in this case, by necessary implication from its award of consequential damages and by its reference to the damage caused by the loss of access to the bridge approach, found the access remaining to be unsuitable, while the Appellate Division disagreed and found it to be merely circuitous and not unsuitable and insufficient. In this posture, the issue then is whether the record as a whole supports the determination of the trial court or that of the Appellate Division
 
 (Matter of City of New York
 
 [Coogan], 20 N Y 2d 618, 623;
 
 Matter of City of New York [A. & W. Realty Corp.],
 
 1 N Y 2d 428; CPLR, 5501, subd. [b]).
 

 Before attempting to evaluate the evidence as to the nature and character of the remaining access with a view toward the ultimate characterization of it either as merely circuitous or as unsuitable, it is first necessary that those concepts be given content and substance. Case law has indicated that mere inconvenience of access is insufficient to constitute unsuitability
 
 (Holmes
 
 v.
 
 State of New York,
 
 279 App. Div. 489, 491) and that ‘ ‘ Suitable access now is any access by which entrance may be had to a property without difficulty”
 
 (Slepian
 
 v.
 
 State of
 
 
 *156
 

 New York,
 
 48 Misc 2d 340, 342) and, further, that the question of suitability is a factual one directly related to the highest and best use of the property
 
 (King
 
 v.
 
 State of New York,
 
 29 A D 2d 604;
 
 Laken Realty Corp.
 
 v.
 
 State of New York,
 
 29 A D 2d 1027, supra;
 
 Red Apple Rest
 
 v.
 
 State of New York,
 
 27 A D 2d 417, 420,
 
 supra).
 
 Such formulations, however, do not provide any definite or certain guides to the decision of particular cases. In light of this, the very definition of the concepts involved can provide a basis upon which to approach such determinations. “ Circuitous,” in its commonly accepted understanding, indicates that which is roundabout and indirect but which nevertheless leads to the same destination. “ Suitable,” in its commonly accepted understanding, describes that which is adequate to the requirements of or answers the needs of a particular object. The concepts are not mutually exclusive and, therefore, a finding that a means of access is indeed circuitous does not eliminate the possibility that that same means of access might also he unsuitable in that it is inadequate to the access needs inherent in the highest and best use of the property involved.
 

 The access remaining after the appropriation of the property involved in this appeal illustrates the proposition that unsuitability may well be superimposed upon what is undoubtedly circuitous access. The property remaining here consisted of some 77 acres in a rectangular shape to which access could be had only by means of a roadway which led onto the property at its northwestern border beneath a bridge. The expert testimony established a highest and best use of the property which was that of residential development, differing only as to the
 
 degree
 
 to which that developmental potential had been damaged by the character of the remaining access. On this evidence, together with its view of the premises, the trial court clearly had abundant justification for its finding of unsuitability. Even the State’s expert on the State’s direct case found that there were substantial ($17,000) consequential damages flowing from the character of the only remaining access. On this record, the evidence clearly supports the finding of the trial court. Indeed, there is virtually no evidence to support the Appellate Division’s finding that it was merely circuitous, though its circuity was acutely apparent from the fact that the remaining
 
 *157
 
 access requires vehicles to cross an opposing stream of traffic on a heavily travelled bridge approach in order to reach a road paralleling the bridge approach and the bridge itself on the side opposite the claimants’ property, and that that road intersects with a road which then leads under a bridge to the extreme northern portion of claimants’ property, whereas the property taken would have allowed direct access from the bridge approach to the southern portion of the property. The evidence fairly compels the conclusion that the remaining access, concededly circuitous, was also clearly unsuitable to the established highest and best use of residential development. Since the evidence so clearly supports the finding and judgments of the Court of Claims, its judgments should be reinstated and the orders of the Appellate Division should be reversed.
 

 The orders of the Appellate Division should be reversed, with costs to the appellant, and the judgments of the Court of Claims reinstated.
 

 Chief Judge Ftjld and Judges Scileppi, Bergan, Keating, Breitel and Jasen concur.
 

 Orders reversed, with costs in this court and in the Appellate Division, and judgments of the Court of Claims reinstated.