Chief Judge Breitel.
In an eminent domain appropriation proceeding in connection with the relocation of a highway, the State of New York appeals. Claimant’s property had previously fronted on the old highway and, although only partially developed, was zoned for retail business. After the highway’s relocation, which entailed permanent appropriation of only a *330 small fraction of the tract and no interest of claimant in the roadbed, the remaining property possessed a reduced "corner” frontage on the old road and a short spur connection to the new route. In view of the smaller frontal exposure to a lighter stream of traffic, the property’s value was diminished and it was rezoned for light industrial use. The dispute is over the measure of the damages consequential to the taking by the State.
Given the conceded diminution in the economic value of the remainder of claimant’s 23.565 acres reduced by a taking of less than a third of an acre, the issue is whether that diminution was caused by compensable loss of suitable access or by noncompensable diversion of highway traffic. The Court of Claims found that the loss in value was attributable not to inadequate access, but to the noncompensable highway relocation and diversion of traffic; the owner obtained a $50,859 judgment only for the minor acreage permanently appropriated. The Appellate Division, modifying, held that access had been rendered unsuitable for retail business, the property’s prior highest and best use, and awarded an additional $236,-015 in consequential damages.
The order of the Appellate Division should be reversed, and the Court of Claims’ judgment reinstated. The owner had no title or easement in the road and no vested right either in the continuance of a highway or its traffic along his property; if the State left him suitable ingress and egress it could with impunity create a new route and eliminate the old. It was not an appropriation of frontage, but the noncompensable highway relocation diverting traffic which eliminated retail business as the highest and best use of the property. For light industrial business, recognized as the succeeding highest use, the highway access provided by the State was entirely suitable, and no additional compensation was required.
La Briola owned 23.565 acres of land located on the north side of Route 22 in the Town of North Castle, near the Village of Armonk in Westchester County. The irregularly shaped parcel had approximately 1,100 feet of frontage on the highway, and, at its furthest point, extended about 1,100 feet back from the road. The property was used for a nursery business, and improvements such as a drilled well and water system, a septic tank, fences, driveway, and parking area, had been made.
The property was zoned for retail business along its entire
*331 frontage to a depth of 300 feet, or about 7½ acres. A middle portion of about 13 acres was zoned for light industrial use, and the rear part of the property was zoned for residential use.
The State in 1967 relocated Route 22 to a position about 150 feet south of the old highway, and roughly parallel to it. The concrete roadbed of old Route 22, as it extended along 941 feet of La Briola’s frontage, was physically removed, and a chain link fence erected separating the property from what had once been the old road. In the southeast corner of the property there remained 165 feet of frontage along old Route 22, at the point where it commenced running eastward towards Armonk. The State created a junction at this point by building an access ramp running about 150 feet in a southerly direction into new Route 22.
Thus, after the highway relocation, La Briola’s property retained some frontage on what remained of the old road, and had direct access to the new highway. Nevertheless, due to the same relocation much of the property no longer faced a highway. In consequence of that, and the diversion of traffic, the highest and best use of the property was reduced to light industrial purposes. Appraisers for both sides concur in this opinion, and, indeed, the property had been so rezoned by the North Castle Town Board.
Although the highway relocation resulted in 941 feet of claimant’s land no longer facing a highway, a very small fraction of claimant’s property, consisting of two parcels totaling less than a third of an acre, was permanently appropriated. (There was also a temporary easement on a third, smaller parcel.) The old roadbed, equal to 5.705 acres, the State appropriated from itself; claimant had no title or easement in that roadbed.
An owner is not entitled to compensation for loss of "frontage” resulting from the discontinuance of a highway on which his property abutted, as distinguished from the taking of frontage property. He has no vested interest in the continuance of a highway or its traffic. The highway and its traffic rise from a function of the State and are not a product or utility of the property. Even if the relocation diverts traffic, impairing the land’s commercial value, it is damnum absque injuria. The benefits of highway contiguity having been freely bestowed, may be freely and even arbitrarily retracted (see Bopp v State of New York, 19 NY2d 368, 372-373; Selig v *332 State of New York, 10 NY2d 34, 39-41; Hall & McChesney v State of New York, 15 Misc 2d 748, 751, affd 11 AD2d 899, mot for lv to app den 8 NY2d 710; see, generally, Nichols, Eminent Domain [3d ed], vol 5, § 16.101, subd [5]; vol 2, § 6.32, subd [2]).
The owner does not contend otherwise. He claims, however, consequential damages on the ground that the appropriation of his "frontage”, meaning only abutment on a highway, rendered access to the remaining property unsuitable to retail business, its highest and best use prior to the taking.
If the State’s appropriation of highway-abutting land (true frontage), or the physical construction of the improvement itself, so impairs access to the remaining property that it can no longer sustain its previous highest and best use, then the State must pay consequential damages to the owner (see Priestly v State of New York, 23 NY2d 152, 155-157; Lundquist v State of New York, 33 AD2d 950; Laken Realty Corp. v State of New York, 29 AD2d 1027; Red Apple Rest, v State of New York, 27 AD2d 417, 420).
In the case of a highway relocation, however, this principle requires a different application. Again, the State is entitled to discontinue the old highway and divert the traffic elsewhere, without compensating the formerly-abutting properties for diminished value. If a property’s highest and best use was one contingent on highway contiguity, the owner must turn to its next best use. The pertinent highest use in assessing suitability of access is that which survives the highway relocation. This is so regardless whether the relocation and the attendant reduction in highest use can be technically said to "precede” a partial taking; the relocation and its consequences, being noncompensable, must be discounted. (Relocation here refers, of course, to a straightforward removal; severe obstruction or grade changes involved in the highway reconstruction would create a different problem [see Selig v State of New York, 10 NY2d 34, 39, supra and cases cited].)
Here the highway relocation alone accounts for the reduction in the highest and best use of La Briola’s land to light industrial purposes. The prospects for retail business would have been bleak enough if traffic had only been diverted onto a new highway; the elimination of much of the old adjoining route as well rendered it impractical. This "frontage” was not "taken” from the owner; it disappeared when the State decided to eliminate the road which it had built on its own land. *333 Only a third of an acre, which was true frontage, was actually “taken” from La Briola and for this he was fully compensated.
With the noncompensable highway removal then, light industrial uses were the highest and best which this property could support. If the State’s appropriations and reconstructions had deprived the property of suitable access for even this less valuable use, then consequential damages would be owing. The Court of Claims, however, found otherwise, and its finding is supported by the record. The property was not left in a culde-sac or landlocked; it retained some frontage on the old road, and short, direct access to the new highway for travel east and west.
Priestly v State of New York (23 NY2d 152), where consequential damages were awarded for unsuitable access following a partial taking for highway and bridge approach purposes, is not in point. Priestly did not involve a highway relocation diverting traffic and thereby reducing the highest use and value of the property. Priestly presented strictly an “access” problem. The subject property paralleled the approach road to a bridge. A partial taking eliminated direct access from the bridge approach road to the southerly part of the property. The only remaining access route was both circuitous and difficult, to the point of being convoluted and serpentine. This court held, as it must have, that the evidence supported the trial court’s finding that the access after the taking was unsuitable for the residential use to which the property had been best suited.
This case is governed not by Priestly but by Bopp v State of New York (19 NY2d 368, supra). The Bopps had owned a motel-lodge and restaurant at the junction of State Route 28 and a road leading to a popular skiing and recreational area. In 1959 the State reconstructed Route 28, severing and closing off the highway at points both east and west of the Bopps’ property, and relocating it closer to the recreational area. The Bopps would have had no access to Route 28 at all if the State had not constructed a “G-spur” macadam road to connect the property with new Route 28. Still, because of the loss of abutment on and visibility from the highway, the motel-lodge and restaurant could not be operated profitably, and had to be converted into a summer residence. This court, affirming the Appellate Division’s reversal on the law and facts, confirmed the rule that loss of property value from highway relocation and diversion of traffic is noncompensable.
*334 In both Bopp and the present case, the highest and best uses of the abutting properties were predicated on the stream of heavy traffic, a function of the highway and not of the property. These highest uses were then lost when the State relocated the highways, which it was free to do without compensation to abutting owners. Alternative access roads were provided, but nothing comparable to what had once been highway abutment. Like La Briola, the Bopps had also described their grievance as unsuitable access, a theory this court explicitly rejected. In the case of highway relocation, Judge Keating wrote, "the owner of property is not entitled to damages incurred because access is no longer as direct as it once was or because the new or remaining access is less than ideal [citations omitted]” (Bopp v State of New York, 19 NY2d 368, 372, supra). (See, also, Selig v State of New York, 10 NY2d 34, 39-41, supra.)
Put another way, the key to the resolution of the issue in this case is that the reduction in highest use of claimant’s property was caused not by loss of suitable access but by the loss of abutment on a highway and its profitable traffic. Even if the old road had been left where it was, but with its profitable traffic gone, the highest use would have been reduced. Even if the old road had been dead ended after passing claimant’s property, which of course the State could have done, the highest use would have been reduced. It was therefore the loss of abutment on a highway which reduced the highest use and not the taking of any "frontage”, miscalled as it was by claimant and the Appellate Division, which reduced the highest use. Indeed, to top it off, except for one insignificant portion, there was no taking of a frontage, a true frontage, and the suitability of access was not determinable by the prior highest use but by the highest use after the relocation of the highway and the diversion of profitable traffic.
That La Briola’s property could no longer be profitably used for retail business was a noncompensable misfortune. For the light industrial use still feasible, the access provided was found suitable by the trial court, a finding supported by the evidence.
What divides this court, and what occasioned the Appellate Division’s reversal of the Court of Claims, is in large part a question of fact. In this situation, of course, this court is empowered to select between the evidence-supported findings of the two courts below, and render the judgment it believes *335 proper. Indeed, this is precisely what the court had occasion to do in Bopp v State of New York (19 NY2d 368, 372-373, supra) and Priestly v State of New York (23 NY2d 152, 155-157, supra).
The critical fact in this case found by the Court of Claims and favored by this court is that the noncompensable diversion of traffic by the construction of the new highway destroyed the old highest use for roadside business. Under those circumstances, the State had no obligation to provide access to an earlier but now obsolete use. It did have the obligation to provide access to claimant’s land for the surviving use, namely, light industrial.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of the Court of Claims reinstated.