732 F.2d 38
 FALLS RIVERWAY REALTY, INC. and Forest City Development
Corp., Plaintiffs-Appellants,
v.
The CITY OF NIAGARA FALLS, NEW YORK and Niagara Falls Urban
Renewal Agency, Defendants and Third-Party
Plaintiffs-Appellees.
v.
Samuel PIERCE, as Secretary of the United States Department
of Housing and Urban Development and Joseph Monticciolo, as
Regional Administrator, Region II, of the United States
Department of Housing and Urban Development and Richard W.
Lippold, as Buffalo Area Manager, Buffalo Area Office,
Region II, of the United States Department of Housing and
Urban Development, Third-Party Defendants.
 No. 623, Docket 83-6275.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 24, 1984.
Decided April 9, 1984.
 
 Philip S. Gellman, Niagara Falls, N.Y. (Gellman & Gellman, Niagara Falls, N.Y., of counsel), for plaintiffs-appellants.
 Patrick Berrigan, Niagara Falls, N.Y., for defendant-third-party plaintiff-appellee, City of Niagara Falls, N.Y.
 Blair & Roach, Buffalo, N.Y., for defendant-third-party plaintiff-appellee, Niagara Falls Urban Renewal Agency.
 Before LUMBARD, MESKILL and PRATT, Circuit Judges.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 Plaintiffs Falls Riverway Realty, Inc. and Forest City Development Corp. appeal from a summary judgment of the United States District Court for the Western District of New York, Curtin, J., dismissing their complaint for damages resulting from loss of suitable street access to their property. Because the suitability of plaintiffs' access presents issues of fact under New York law, the judgment is reversed and the case remanded for further proceedings.
 
 FACTS
 
 2
 Plaintiffs' property is a roughly rectangular parcel in downtown Niagara Falls, New York, bounded 266 feet on the north by Falls Street and 168 feet on the east by Main Street. It is improved with a two-story L-shaped structure running along the entire frontage of Falls Street and 123 feet along Main Street. The remaining Main Street frontage is a 45 foot driveway providing the only access to plaintiffs' interior parking lot located on that part of the parcel not covered by the building.
 
 
 3
 In earlier days the building was occupied by retail stores, including such major tenants as J.C. Penney, Sears and Singer Sewing Machine. It is now substantially, if not entirely, vacant. Before the urban renewal project that precipitated this lawsuit, Main Street was the main vehicular artery connecting the Rainbow Bridge Plaza and Niagara Street, on the north, with Buffalo Avenue, First Street, and the entrance to Goat Island, on the south. Falls Street, also a major commercial artery, ran easterly from the subject property's westerly boundary and intersected Main Street at the northeast corner of the subject property.
 
 
 4
 The urban renewal plan contemplated major revisions in traffic patterns and land uses in the vicinity of the subject property. Some of the changes have been implemented; others appear to have been abandoned, at least for the present. The actual changes relevant to this appeal involve Falls Street and Main Street. Falls Street has been closed to all vehicular traffic and converted into Rainbow Mall, a street devoted exclusively to pedestrian use.
 
 
 5
 Main Street is no longer a commercial artery. North of Rainbow Mall it has been abandoned. South of Rainbow Mall, opposite the subject property, the street can be reached only from the south, and it dead ends at Rainbow Mall. That portion of the street abutting the subject property is used as a parking area, although vehicles still have access to the subject property over the same 45 foot driveway. While Main Street has been physically unchanged south of Rainbow Mall, it nevertheless has changed in character and function because it is closed off at Rainbow Mall, leads to the subject property only from the south, carries no through vehicular traffic, and attracts only people seeking the subject property or wishing to use the street for parking purposes.
 
 
 6
 More than seven years ago plaintiffs commenced an action in New York State Supreme Court, Niagara County, against the city and the Niagara Falls Urban Renewal Agency to recover damages claimed to have been caused by the urban renewal project. The first two of its three causes of action were premised on theories that Falls Street and Main Street had been abandoned, causing title to the center line of each street to revert to plaintiffs as the abutting owners, and that subsequent use of the former streets for the pedestrian mall and parking area constituted a taking of plaintiffs' property for which they were entitled to compensation. Plaintiffs' third cause of action sought damages on the theory that defendants had deprived the subject property of reasonable and suitable access consistent with its highest and best use, which was retail commercial.
 
 
 7
 In January 1977 defendants moved to dismiss all three causes of action. The state court granted the motion as to the first cause of action, concluding that Falls Street had not been abandoned but simply converted to pedestrian rather than vehicular use. The court denied the balance of the motion, finding that the second and third causes of action presented questions of fact requiring a trial. As to the second cause of action, there was at that time a possibility that part of Main Street would be formally abandoned and sold to commercial developers, so the court left that matter for greater factual development at a trial. On the third cause of action the court concluded that the extent of defendants' interference with access and the suitability of what had been allowed to remain presented a triable issue.
 
 
 8
 The case then meandered along until September 1981 when, on the eve of the state court trial, defendants served a third-party summons and complaint on officials of the United States Department of Housing and Urban Development (HUD). On behalf of the HUD officials, the U.S. Attorney removed the entire action to the United States District Court for the Western District of New York pursuant to 28 U.S.C. Secs. 1441 and 1442. Plaintiffs moved to sever the state claims from the federal third-party claims and to have the state claims remanded, but the district court denied that motion. HUD then moved to dismiss the third-party claims, and defendants moved to dismiss the complaint's remaining two causes of action.
 
 
 9
 Judge Curtin granted HUD's motion, and believing that "the speediest resolution of this case may be had if this court continues jurisdiction" over the state law claims even though the basis for removal to federal court had now disappeared from the case with dismissal of the federal agency, he turned his attention to defendants' motions, permitting additional papers and oral argument. Defendants established that the possible abandonment of Main Street, which had prompted the state court to deny summary judgment on the second cause of action, had not occurred. They also established that there had been no direct taking of any part of the subject property, and that the 45 foot entrance from Main Street to the parking area of the subject property had not been physically altered.
 
 
 10
 In opposing summary judgment, plaintiffs abandoned the second cause of action and concentrated their attention on the third, claiming that the access remaining to their property as a result of the street closings and changes was unsuitable. In support, plaintiffs presented, among other things, an affidavit by the former planning director for the City of Niagara Falls in which he asserted that, while the subject property had "excellent vehicular access" through Falls Street and Main Street prior to the urban renewal plan, "abandonment" of the streets and the failure to implement other aspects of the original plan made the access remaining to the subject property "very poor". Plaintiffs also submitted the affidavit of a professional engineer who asserted that with the elimination of vehicles from Falls Street and the dead-ending of Main Street at the south line of Falls Street the "vehicular access to the subject property at the rear of said building * * * cannot accommodate sufficient vehicular traffic to support the prior use of the building which was department store commercial." Plaintiffs further contended that the conversion of Main Street from an arterial commercial street into a parking lot deprived them of its utility as a street. These circumstances, plaintiffs contended, created a triable issue as to the suitability of plaintiffs' remaining access.
 
 
 11
 Viewing plaintiffs' claim as one for the diminished value of the subject property caused by "diverting vehicular traffic from the premises and its immediate area", the district court concluded that "New York law does not permit the recovery of damages for diminution in the value of property resulting from the relocation of a public road which diverts traffic or interferes with access to the property"; that "[p]laintiffs still have the same access to the premises they had before the plan went into effect"; and that "[m]erely because the access is more inconvenient does not create any cause of action, since there has been no taking of plaintiffs' property." For these reasons the district court granted summary judgment and dismissed the rest of the complaint.
 
 DISCUSSION
 
 12
 Whatever may have been earlier law in New York, it now seems clear that a property owner in the vicinity of a condemnation or urban renewal project, who has not been left with "suitable access", is entitled to compensation even though there has been no taking of plaintiff's own property. Chemung Canal Trust Co. v. State, 90 A.D.2d 889, 456 N.Y.S.2d 518 (3d Dept.1982); Gengarelly v. Glen Cove Urban Renewal Agency, 69 A.D.2d 524, 418 N.Y.S.2d 790 (2d Dept.1979). In Chemung Canal Trust Co. v. State, the court held: "[T]he fact that the taking and closing of State Street did not involve any direct taking of plaintiff's land does not preclude recovery in damages if, through that taking, claimant's property was in fact deprived of suitable access." 90 A.D.2d at 990, 456 N.Y.S.2d at 519. In so holding, the Third Department relied on a similar determination in Gengarelly v. Glen Cove Urban Renewal Agency: "It is hornbook law that a State or municipality may close a street, if acting under proper statutory authority, but a suitable means of access must be left an abutting owner or else he is entitled to compensation * * *." 69 A.D.2d at 526, 418 N.Y.S.2d at 792.
 
 
 13
 If we were to interpret the district court's determination as denying damages simply because there had been no direct taking, we would have to conclude that it misinterpreted the applicable New York law mentioned above. We prefer instead to interpret the decision below as having directed itself to the key issue, whether plaintiffs' remaining access was "suitable". On that issue, the district court seems to have determined as a matter of law that the access must be suitable because plaintiffs "still have the same access to the premises they had before the plan went into effect."
 
 
 14
 We do not think that suitability of access under New York law can be so readily determined on papers. For over 15 years New York courts have struggled with the "rather murky distinction between access which is merely 'circuitous' and, therefore, insufficient as a basis for consequential damages and that which is 'unsuitable' and, therefore, compensable." Priestly v. State, 23 N.Y.2d 152, 155, 295 N.Y.S.2d 659, 662, 242 N.E.2d 827, 829 (1968). Indeed, the concepts are not mutually exclusive, but overlap in the sense that circuitous access "might also be unsuitable in that it is inadequate to the access needs inherent in the highest and best use of the property involved." Id. at 156, 295 N.Y.S.2d at 663, 242 N.E.2d at 830. Since the dividing line between noncompensable access that is merely circuitous or inconvenient, and compensable access that is unsuitable, is imprecise and depends upon the nature and character of the remaining access in light of the highest and best use of the subject property, the inquiry is viewed in New York as uniquely factual, one that rarely can be decided on summary judgment. See Priestly v. State, 23 N.Y.2d at 156, 295 N.Y.S.2d at 663, 242 N.E.2d at 829 ("the question of suitability is a factual one directly related to the highest and best use of the property"); La Briola v. State, 36 N.Y.2d 328, 337, 368 N.Y.S.2d 147, 156, 328 N.E.2d 781, 787 (1975) (suitability of access "is in large part a question of fact"); Chemung Canal Trust Co. v. State, 90 A.D.2d at 990, 456 N.Y.S.2d at 519; ("[u]nsuitability of access is not to be determined in the abstract, but in relation to the need for access inherent in the highest and best use of the property * * *. What constitutes the highest, best use and access suitable for such use is generally a question of fact * * * "); Gengarelly v. Glen Cove Urban Renewal Agency, 69 A.D.2d at 526-27, 418 N.Y.S.2d at 792 ("[w]hat may be a suitable means of access is, of course, a question of fact to be left to the trial court").
 
 
 15
 While the driveway onto the subject property was not physically changed by the urban renewal project, accessibility of vehicles to that driveway was substantially changed by the alteration in street uses and traffic patterns. In short, while the basic facts are uncontested, we think that their evaluation and interpretation in light of the need for access inherent in the highest and best use of the property requires a trial on the merits of plaintiffs' third cause of action. Accordingly, we reverse the judgment appealed from insofar as it dismissed the third cause of action and remand for further proceedings.
 
 
 16
 The only remaining question is where the trial should be. Plaintiffs would have us direct the district court to remand the case to state court. However, we do not accept plaintiffs' contention that dismissal of the third-party complaint deprived the federal court of jurisdiction over plaintiffs' state claims. Galella v. Onassis, 487 F.2d 986, 996 (2d Cir.1973); Murphy v. Kodz, 351 F.2d 163, 167-68 (9th Cir.1965). As we held in Galella, after dismissal of the claim against federal officers on which removal jurisdiction was based, "[w]hether the claim was to be remanded was within the court's discretion after consideration of judicial economy and fairness to the litigants." Galella v. Onassis, 487 F.2d at 996.
 
 
 17
 When the district court first decided to retain jurisdiction over the state law claims, it had pending before it motions for summary judgment, and we do not quarrel with its determination that at that time "the speediest resolution of this case may be had if this court continues jurisdiction." Now that a trial on the merits has become necessary, however, the district court should once again weigh the circumstances to determine whether remand would now be appropriate. Such reevaluation should consider such factors as judicial economy, fairness to the parties, the delicacy of the state law issues, the policy of having federal courts avoid "needless decisions of state law", United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the likelihood of a prompt disposition in this long-delayed litigation, and the legitimate interests and expectations of the parties in having a trial in federal court. See Kavit v. A.L. Stamm & Co., 491 F.2d 1176, 1179-80 (2d Cir.1974).
 
 
 18
 We recognize, of course, that this decision lies uniquely in the discretion of the district court, which is in the best position to balance the relevant factors and ultimately determine whether to retain jurisdiction or to remand the case. We merely suggest that instead of automatically proceeding to trial, the district court should first take another look at the remand question.
 
 
 19
 The judgment is reversed insofar as it dismissed the third cause of action, and the case is remanded for further proceedings consistent with this opinion.