In Re: Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Right of Way for Legislative Route 52, Section 19 R/W, and Legislative Route 1101, Section F09, a Limited Access Highway Located in the Townships of Cambria and Munster—Property of: Christ Contakos and Irene Contakos, husband and wife. Commonwealth of Pennsylvania, Department of Transportation, Appellant.

404

Argued October 7, 1985, before Judges ROGERS and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Christine M. Santone,* Assistant Counsel, with her, *Spencer A. Manthorpe,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellant.

*Richard J. Green, Jr.,* for appellees.

OPINION BY SENIOR JUDGE KALISH, December 10, 1985:

The appellees, Christ and Irene Contakos, were the owners of 33.759 acres of vacant ground. The appellant, Department of Transportation (DOT), condemned a part of the appellees' land, leaving a remainder of 13.149 acres. Prior to the taking, the property had 200 feet of access directly onto U.S. Route 22. After the taking, the remainder had access by means of a newly constructed road which is substantially more restrictive as to access than the original road. U.S. Route 22 was converted to a limited access highway. Before the Court of Common Pleas of Cambria County, the property owners' valuation expert gave a before-value of $405,000 and an after-value of $66,000, assessing damages at $398,500. DOT's valuation expert gave a before-value of $51,500 and an after-value of $22,500, assessing damages at $29,000. The jury fixed the damages at $240,000.

On appeal to this court, DOT contends that the verdict was against the weight of the evidence; that the property owners' valuation expert was not qualified; and that the property owners' valuation expert's testimony contained errors and misstatements in connection with his use of comparable properties in determining the fair market value, particularly with re-

spect to his testimony regarding the concept of "access." The common pleas court denied DOT's motion for a new trial. We affirm.

The appellant, DOT, in its motion for a new trial contended that the testimony of the property owners' real estate expert should be stricken and the witness disqualified since his testimony was error-ridden and contained what DOT refers to as "incredibilities." Thus, says DOT, his opinions were not of a qualified real estate expert.

Our scope of review when we are considering the denial of a new trial is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Fink v. Commonwealth,* 85 Pa. Commonwealth Ct. 290, 482 A.2d 281 (1984).

In examining the record it shows that the jury had before it not only the expert's qualifications as set forth below, but also the extensive examination and cross-examination on the judicially determined comparable properties and on the matter of access as it affected after-value.

Whether there were any "incredibilities" or errors or inconsistencies goes to the weight of the evidence and credibility of the witness. It does not affect its admissibility. The trial judge committed no error in not striking the testimony or disqualifying the witness as an expert. He did not abuse his discretion in denying a new trial.

Section 201 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-201, does not define a "qualified valuation expert." The trial judge is given wide discretion in determining whether any witness is "qualified" as an expert. The witness' competency is preliminarily determined by the trial court, which considers the witness' knowledge, skill, experience and training. *Lau-*

*bach v. Haigh,* 433 Pa. 487, 252 A.2d 682 (1969); *Markowitz v. Pittsburgh & Connellsville Railroad Co.,* 216 Pa. 535, 65 A. 1097 (1907). The trial judge also permits cross-examination as to his or her qualifications before the witness may testify. Here, the property owners' valuation expert testified that he had been a real estate appraiser for twenty-five years; that he had attended appraisal courses at Penn State University and Pittsburgh University; that he was a Member of the Appraisal Institute (M.A.I.); that he lectured and gave courses on making appraisals; that he had previously testified in court as an expert; and that he was familiar with the property involved before its condemnation. He was not cross-examined and no objection was made to his qualifications.

Section 705(2) of the Eminent Domain Code, 26 P.S. §1-705(2), allows an expert to testify to the sales price of comparable properties made within a reasonable time before or after the condemnation. Section 705(1), 26 P.S. §1-705(1), allows the expert to state all facts and data which he considered in arriving at his opinion of the fair market value. The expert's testimony of such facts and data, and the sources of his information are subject to impeachment and rebuttal.

Since no two properties are exactly alike, the trial court allowed DOT wide latitude in questioning the appellee's expert regarding what adjustments he made to the sales prices of the eight comparable properties he considered in aiding him in his opinion of the fair market value of the subject property. Adjustments, and the extent of them, play a very important part and are relevant factors in determining fair market value. These adjustments, as to size, time and condition of the comparable properties, are to be considered by the jury in determining the credibility of

the valuation expert and the weight to be given to his testimony. *Urban Redevelopment Authority of Pittsburgh v. Lewis,* 5 Pa. Commonwealth Ct. 176, 289 A.2d 774 (1972).

The trial judge has the duty of determining whether a sale is "judicially comparable." DOT made no objection to the admission of the eight properties considered by the appellees' valuation expert as "comparable." *Commonwealth v. 108.3 Acres of Land,* 431 Pa. 341, 246 A.2d 124 (1968). The record shows that the trial court felt that there was enough similarity in type and class and we conclude that their admission into evidence was not capricious or an abuse of discretion.

Much of DOT's cross-examination of the appellees' appraisal expert concerned access to the remainder of the property after the condemnation and its effect on the valuations. In this connection, DOT has a misconception of the property owners' claim for damages, as it concerns the remainder. The issue was not whether there was a deprivation of the property right of access but rather the nature of the access as it affected the remainder.

In Pennsylvania, the measure of damages has always been the difference between the fair market value of the land before the taking, and the fair market value of the land after the taking, *as affected by the taking and considering all the uses to which the land might reasonably be put.*[1] Section 602(a) of the Eminent Domain Code, 26 P.S. §1-602(a); *Mazur v. Commonwealth,* 390 Pa. 148, 134 A.2d 669 (1957). Any detrimental factors that may reasonably

---

[1] Fair market value is the price which would be agreed upon by a willing and informed buyer and seller, taking into consideration the present use of the property and its highest and best use. Section 603 of the Eminent Domain Code, 26 P.S. §1-603.

be relevant to the valuation of real estate may be considered by the appraiser in arriving at his after-value.

U.S. Route 22, upon which the property had fronted before the condemnation, was converted into a limited access highway. Access to the remainder is now obtained by a newly constructed road.

Where a partial taking interferes with suitable access, rendering it unsuited for its present use or for its highest and best use, this may be considered in determining the fair market value of the remainder. *City of Philadelphia v. Sterling Metalware Co.,* 48 Pa. Commonwealth Ct. 313, 410 A.2d 90 (1980); *Tracy v. Department of Transportation,* 43 Pa. Commonwealth Ct. 218, 402 A.2d 286 (1979).

There is a direct relationship between suitable access and the highest and best use. *Priestly v. State,* 23 N.Y.2d 152, 242 N.E.2d 827, 295 N.Y.S.2d 659 (1968). Use is an extremely important factor in determining fair market value. Here, the property owners' expert testified that the highest and best use of the property was for commercial uses. What factors he considered, how he arrived at that opinion, and whether he made any errors are for the jury who determines his credibility and the weight of his testimony. The nature of the access in connection with this use is one of the factors to consider in arriving at the effect of the partial taking on the fair market value of the remainder. It may or may not affect or reduce the value of the remainder, but the jury should be informed of it. The question of its effect on the remainder is left for the jury to decide.

Through cross-examination, DOT had the opportunity, and in fact did point out, what it perceived to be errors and other incredibilities in the appellees' appraisal expert's testimony. It is the function of the jury to determine and resolve the discrepancies in the

testimony of the expert witnesses. The weight of the testimony may be affected, but not its admissibility. *Commonwealth v. Herold,* 17 Pa. Commonwealth Ct. 148, 330 A.2d 890 (1975).

Thus, since the trial judge committed no error, it would have been an abuse of discretion to grant a new trial simply because of the wide disparity in value testimony when the verdict falls within the range of testimony. *Fink v. Commonwealth,* 85 Pa. Commonwealth Ct. 290, 482 A.2d 281 (1984). The verdict of the jury was not against the weight of the evidence.

ORDER

The order of the Court of Common Pleas of Cambria County in No. 1981-307, dated July 3, 1984, is affirmed.