■ JACK S. INGBER et al., Appellants-Respondents, v STATE OF NEW YORK, Respondent-Appellant.—Crew III, J. Cross appeals from a judgment in favor of claimants, entered May 28, 1991, upon a decision of the Court of Claims (Hanifin, J.).

This claim arises out of a partial appropriation by the State of property owned by claimants located in the Town of Thompson, Sullivan County. Claimants originally held title to approximately 18 acres of land. In 1985, claimants conveyed a parcel consisting of approximately one acre to McDonald's Corporation (hereinafter the McDonald's parcel) and reserved a 50-foot right-of-way between their northernmost boundary line and that of the McDonald's parcel as access to State Route 42. Claimants thereafter conveyed a two-acre portion of land east of the McDonald's parcel to George Banta for development as a motel. Claimants also entered into a con-

tract to sell another two-acre parcel south of the McDonald's parcel to Eli Backer on behalf of Friendly Ice Cream Corporation (hereinafter the Friendly's parcel). The Friendly's parcel included the remaining frontage on Route 42 (approximately 180 feet) and the use of the right-of-way existing between it and the McDonald's parcel. Claimants also reserved a right-of-way for ingress and egress over their remaining lands and the contract was contingent upon Backer's ability to secure an "access permit for entry only" from the State Department of Transportation (hereinafter DOT) allowing access to the Friendly's parcel from Route 42. DOT denied Backer's request for the entrance permit and the contract to purchase the Friendly's parcel was canceled in October 1987. Thereafter, the State erected a guiderail along the 180 feet of property fronting Route 42, leaving only the 50-foot right-of-way open for access to claimants' remaining lands.

On or about October 4, 1988, the State filed an appropriation map and formally took title to a one-foot wide strip of land running the length of claimants' Route 42 frontage. Claimants thereafter filed a claim for just compensation in the amount of $475,500. Following a trial, the Court of Claims, *inter alia,* awarded claimants $320 in direct damages and $79,840 in consequential damages, with interest from the date of the taking (determined by the Court of Claims to be Oct. 4, 1988), for a total of $99,542.71. These cross appeals followed.

Both claimants' appraiser, Rendich Meola, and the State's appraiser, Harold Fountain, utilized the market data approach in valuing claimants' property. Meola concluded that the highest and best before-appropriation use of the property was a shopping center, while the highest and best after-appropriation use was a less intensive commercial development, such as a lumberyard or warehouse. Based upon his review of various comparable sales, Meola found that the entire 15-acre parcel had a before value of $750,000 ($50,000/acre) and an after value of $450,000 ($30,000/acre). Meola was of the view that the taking severely limited ingress and egress over the parcel and assessed direct damages at $200 ($50,000 × 0.004 acre)[1] and consequential damages at $299,800.

Fountain determined that the highest and best before-appropriation use of the property was some type of commercial development, possibly with a fast-food restaurant on the former Friendly's parcel and a shopping center on the remaining 13 acres. Based upon his analysis of three comparable sales,

---

1. The 0.004 acre represents the land appropriated by the State.

Fountain valued the entire 15-acre parcel at $525,000 ($35,000/acre) before the taking and at $495,000 ($33,000/acre) after the taking. Fountain, however, was of the view that the former Friendly's parcel was more valuable than the average acreage on the property and examined seven comparable sales to determine the before and after value of this portion of claimants' land. Fountain concluded that the former Friendly's parcel had a before value of $160,000 ($80,000/acre) and an after value of $130,000 ($65,000/acre). Because Fountain was of the view that only this portion of claimants' property suffered as a result of the appropriation, he assessed direct damages at $140 ($35,000 × 0.004 acre) and consequential damages at $30,000.

Claimants initially contend that Fountain's valuation of the property was fundamentally flawed because Fountain failed to appraise the property at its highest and best use, i.e., a shopping center. The record plainly reveals, however, that Fountain specifically considered the possibility of developing a shopping center on the rear 13 acres. Although claimants also argue that the comparable sales used by Fountain in his valuation of the entire 15 acres, which ranged from approximately 2½ to 4 acres, were too small to be considered comparable, "[t]he degree of comparability between parcels presents a factual assessment properly within the province of the trial court" *(Matter of County of Broome [Miller Facilities Corp.],* 133 AD2d 984, 986). Moreover, contrary to claimants' assertion, adjustments were made to account for, *inter alia,* the difference in size between claimants' property and the comparables *(see, Matter of Town of Cobleskill [Hayman],* 149 AD2d 876, 877). Finally, we do not agree that Fountain was required to present separate comparable sales in his valuation of the 13-acre parcel. Fountain could logically arrive at a per acre value for this portion of claimants' land based upon his utilization of comparable sales for both the 15 acres as a whole and the two-acre former Friendly's parcel. We have examined claimants' remaining challenges to Fountain's appraisal and find them to be without merit.

Turning now to the issue of damages, both claimants and the State argue that the Court of Claims erred in its award of compensation. In awarding direct and consequential damages, the Court of Claims essentially followed Fountain's allocation of value approach and assigned separate values to the former Friendly's parcel and the remaining 13 acres. As noted previously, the court awarded $320 in direct damages ($80,000 × 0.004 acre [before-appropriation value of former Friendly's

parcel])² and $79,840 in consequential damages (1.996 acres × $40,000 [after-appropriation value of former Friendly's parcel]); in so doing, the Court of Claims concluded that only the former Friendly's parcel sustained damage as a result of the taking.

It is well settled that "[i]n determining an award to an owner of condemned property, the findings must either be within the range of the expert testimony or be supported by other evidence and adequately explained by the court" *(Matter of City of New York [Reiss]*, 55 NY2d 885, 886; *see, Gerosa, Inc. v State of New York*, 180 AD2d 552, 553). Initially, we note that contrary to claimants' assertion, the Court of Claims considered and utilized both appraisers' reports in fashioning its award of compensation and the award as a whole falls within the range of expert testimony. We find merit, however, in the assertion that the court erred in failing to take into account the applicable zoning requirements. The record before us indicates that the relevant Town of Thompson zoning regulations required a minimum lot size of three acres for eating and drinking establishments. Although both the McDonald's parcel and the parcel conveyed to Banta for development as a motel failed to meet the minimum lot size requirements, there is no indication that variances other than the presumed McDonald's variance had been granted or that there was "a reasonable probability of rezoning" *(Spriggs v State of New York*, 54 AD2d 1080). Accordingly, the before-appropriation value of claimants' property should be allocated as follows:

| | |
|---|---|
| 3 acres @ $80,000/acre | $240,000 |
| 12 acres @ $40,000/acre | 480,000 |
| | $720,000 |

A similar adjustment must be made to the Court of Claims' calculations as to the after-appropriation value of claimants' land.

| | |
|---|---|
| 2.996 acres @ $40,000/acre | $119,840 |
| 12 acres @ $40,000/acre | 480,000 |
| | $599,840 |

2. The Court of Claims found that Fountain inadvertently valued this portion of claimants' land using the per acre value adopted for the entire 15 acres ($35,000).

This results in a total award to claimants of $120,160, allocated as follows:

Direct damages:
  0.004 acre @ $80,000/acre     $    320

Consequential damages:
  2.996 acres @ $40,000/acre     119,840

Total damages:     $120,160

In reaching this result, we observe that although the Court of Claims erred in finding that "claimants had effectively precluded practical access to the 13 rear acres across the frontage south of the McDonald's lot before the appropriation occurred, by virtue of their agreement with Backer", its conclusion that the rear 13 acres did not sustain consequential damages is supported by the record. As the Court of Appeals observed in *Priestly v State of New York* (23 NY2d 152), "[i]t is beyond dispute that mere circuity of access does not constitute a basis for an award of consequential damages" *(supra,* at 155). Although Meola was of the view that access to the entire parcel via the 50-foot right-of-way north of the McDonald's parcel rendered the property unsuitable for development as a shopping center, Fountain's testimony to the contrary provides an adequate basis for the Court of Claims' conclusion that this portion of the parcel did not suffer consequential damages as a result of the taking.

We next address the Court of Claims' award of consequential damages as to the former Friendly's parcel, which is the subject of the State's cross appeal. The State contends that there is no record evidence to support the court's finding that the former Friendly's parcel was "significantly damaged by the loss of [direct] access" from Route 42. We disagree. While it is true that Fountain provided the court with several examples of fast-food restaurants where access was gained via a mall or shopping center entrance, the Court of Claims could reasonably conclude, based upon the direct access to Route 42 enjoyed by McDonald's Corporation, as well as the fact that the contract to purchase the former Friendly's parcel was expressly contingent upon the ability to secure direct access to the parcel from Route 42, that the after-appropriation access to this portion of claimants' land was not simply circuitous but, rather, unsuitable for the parcel's highest and best use as a fast-food restaurant.

Finally, we are of the view that the State's erection of the

guiderail along claimants' Route 42 frontage to effectuate a reasonably safe channelling of traffic was a proper exercise of the State's police power and, hence, did not constitute a de facto taking *(see, Northern Lights Shopping Ctr. v State of New York,* 20 AD2d 415, 419-421, *affd* 15 NY2d 688, *cert denied* 382 US 826). We find the remaining arguments advanced by the parties unpersuasive.

Yesawich Jr., J. P., Levine, Mahoney and Harvey, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as awarded claimants damages of $80,160; award claimants damages of $120,160 together with interest from October 4, 1988; and, as so modified, affirmed.