580 So.2d 230 (1991)
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellant,
v.
LAKEWOOD TRAVEL PARK, INC., Appellee.
No. 90-1477.
District Court of Appeal of Florida, Fourth District.
May 8, 1991.
Rehearing Denied June 5, 1991.
Thornton J. Williams, Gen. Counsel, and Thomas F. Capshew, Asst. Gen. Counsel, Tallahassee, for appellant.
John H. Pelzer, Richard E. Berman and Margaret-Ray Kemper of Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellee.
DOWNEY, Judge.
This case involves an inverse condemnation proceeding in which the State of Florida, Department of Transportation (DOT), appeals from a final judgment requiring the DOT to institute condemnation proceedings against appellee's property.
The property owner, appellee, Lakewood Travel Park, Inc., (Lakewood) operates a travel trailer park on thirty-six acres, located in the vicinity of the confluence of the Florida Turnpike, State Road 7 (U.S. 441), and State Road 84 in Broward County. To illustrate and clarify the location of the *231 property in question and access thereto we have included a photograph/sketch of the area prior to commencement of the construction of interstate highway I-595. The Travel Trailer Park appears in the angle created by the intersection of Burris Road and the State Road 84 Spur (Turnpike access). The State Road 84 Spur branches off from State Road 84 east of the intersection of 84 and State Road 7 and the spur proceeds westerly along the northern boundary of the Lakewood property through a turnpike toll booth and on to the Turnpike proper. Oakes Road, the present remaining access to Burris Road and the Lakewood property, appears at the bottom or south side of the photo.

In the course of the construction of Interstate I-595 in this particular area the DOT eliminated certain roads and relocated others which Lakewood contends adversely affected the access to and from its property and the highway system thereabouts. For example, it appeared from the evidence and the trial judge found the following "before and after" routes available to gain access to the Lakewood property from the Turnpike:
Before the change, travelers on the Turnpike had access to the property by exiting at the State Road 84 exit ramp on to the State Road 84 spur, which is contiguous to the Lakewood property, and then proceeding east to the intersection of the State Road 84 spur and Burris Road. The entrance to the property is ten yards south of the intersection. The approximate distance from the Turnpike to the Park entrance *232 was a little less than three-quarters of a mile. After the change and the elimination of the State Road 84 Spur as access to the Travel Park, the Turnpike traveler must choose from a variety of exit ramps, travel through an interchange to southbound State Road 7, proceed on State Road 7 to the rerouted Oakes Road, on Oakes Road to Burris Road and then to the entrance of the subject property, a distance of approximately 2.44 miles.
Without belaboring in the body of this opinion the various comparisons in accessing the property from other nearby primary highways, suffice to say the changes due to the construction required extended circuitous routes rather than the former ready access from the group of major highways to the property by use of the State Road 84 spur.[1] To fully appreciate the change, it must be remembered that the latter road was eliminated from the picture for all practical purposes because it ceased going anywhere in the road system. The bulk of the traffic seeking out the Lakewood Travel Park was relegated to traversing Oakes Road and then the length of Burris Road to the property entrance. The record contains substantial evidence of the unsuitability of Oakes Road as the sole access route to the park because of the circuitous nature of this route, the heavy industrial character of the neighborhood which Oakes Road traverses with its concomitant traffic, as well as poor lighting and road paving. While an exact comparison of the State Road 84 Spur with Oakes Road is lacking, the maps and photographs show the Spur approach which was the Turnpike access containing a toll booth contiguous to Lakewood's property. From all of the foregoing, we conclude that access to the subject property was substantially diminished by the DOT activity in the immediate area.
The DOT makes much of the fact that, regardless of all of the changes brought about by the construction of I-595 at this location, the single entrance to the subject property remains intact on Burris Road just as it was prior to any change taking place. This might be a telling argument if another of the DOT's contentions is sound, i.e., that the concept of diminished access only involves the immediate entryway into the particular property from an abutting public street. According to its brief, the DOT perceives any evidence concerning access to any roads not abutting the property as irrelevant. Therefore, the DOT contends that, since the subject property did not actually abut the Turnpike, State Road 84, or State Road 7, changes in those roads and approaches thereto regardless of their impact on access to particular private property *233 are not to be considered in determining whether a property owner has suffered a compensable loss due to the public taking.
We believe the DOT's position is too narrow. The term access, a property right in this state, Palm Beach County v. Tessler, 538 So.2d 846 (Fla. 1989); Anhoco Corp. v. Dade County, 144 So.2d 793 (Fla. 1962), in the context of a landowner's right of access has as yet no fixed official definition in Florida. However, in Stoebuck, The Property Right of Access Versus the Power of Eminent Domain, 47 Texas Law Rev. 733 (1969), cited with approval by the Supreme Court of Florida in Tessler, the author suggests several definitions of the term:
It is credible and serviceable in our time and place to define access as an owner's capacity to reach the abutting street and the general street system.
... .
... The property right of access should be defined as the reasonable capacity of a landowner to reach the abutting public way by customary means of locomotion and then to reach the general system of public ways.
Id. at 764-765. Using those definitions of the property right under consideration, it appears to us that the findings of the trial judge are adequately supported by the record.
In his well considered and extensive final judgment, the trial court summed up his findings as follows:
14. This Court concludes based on the facts presented at the trial herein, that the Travel Park's right of access has been substantially diminished, even in light of the remaining access to the property. This taking is far more than the taking of simply the most convenient access to the Travel Park. The I-595 construction and the related imposition of the limited access right-of-way lines through the State Road 84 Spur/Turnpike Access Road and Burris Road, and around the Travel Park, will require the Travel Park's customers to take a tedious and circuitous route to reach the Travel Park which is unsuitable and sharply reduces the quality of access to the Travel Park. Further, the visibility of the Travel Park which existed in the Before Condition by all traffic exiting the Florida Turnpike has been eliminated by the D.O.T.'s actions herein. The Travel Park's recreational vehicle customers will have to make due [sic] with alternate access to the Travel Park by an indirect winding route through a primarily heavy and medium industrial neighborhood, involving literally miles of additional distance and a complete circumnavigation of the area in which the Travel Park is situated. Indeed, the changes to the Travel Park's access are strikingly similar to the changes imposed upon the Tessler landowner, except that the access problems created herein are uniformly more egregious than in Tessler in that: (1) the Travel Park lost direct access from three major highways (Florida Turnpike, State Road 84, U.S. 441), instead of one road (Palmetto Park Road); (2) the additional distance to be traveled by customers is not merely 600 yards, as in Tessler, but over two additional miles from the Turnpike, westbound State Road 84 and U.S. 441 southbound; (3) the industrial neighborhood surrounding the new access route is far less appealing than the Tessler access route through a residential neighborhood in eastern Boca Raton; and (4) the Travel Park's new access route will require many of its customers to negotiate the complex spaghetti web of ramps which comprises the new Turnpike/U.S. 441/I-595/State Road 84 interchange, as opposed to the residential streets off of Palmetto Park Road as in Tessler. The court would further note that (a) the Travel Park's customers are to a large extent tourists unfamiliar with the area, as opposed to customers of a hair salon which presumably has many repeat customers; and (b) the nature of the vehicles frequenting the Travel Park necessarily causes the circuitous, tedious routes to be a greater imposition than would be presented to automobile drivers. While the court does not rely upon these latter two factors in concluding the *234 Travel Park's access has been seriously impaired, these additional factors bolster the court's conclusion.
We would simply sum up by saying that our study of the record and our reading of the relevant cases involving substantially diminished access to private property due to governmental action fully support the judgment appealed from, which makes it appropriate that we affirm said judgment.
AFFIRMED.
HERSEY, C.J., and FRANK, RICHARD H., Associate Judge, concur.
NOTES
[1] Other comparative examples contained in the judgment are:

Before Condition
... .
b. From State Road 84 heading westbound, access to the Travel Park was had via the State Road 84 Spur/Turnpike Access Road via a bridge over 441 which terminated virtually at the entrance to the Travel Park. For vehicles traveling eastbound on State Road 84, access was had to the Travel Park via Burris Road, by turning south from State Road 84 onto Burris Road and traveling approximately a quarter of a mile to the entrance to the Travel Park.
c. From both southbound and northbound U.S. 441, access was had to the Travel Park via an access lane for the State Road 84 Spur/Turnpike Access Road, a distance of approximately a quarter of a mile.
After Condition
... .
a. For State Road 84 traffic heading westbound, vehicles will, through a series of ramps and selection points: (i) access the I-595/State Road 84 interchange, and ultimately proceed via a bridge over U.S. 441; (ii) exit onto an access ramp leading to southbound U.S. 441; (iii) travel approximately one mile to the intersection of U.S. 441 and rerouted Oakes Road; (iv) travel on rerouted Oakes Road to Burris Road; and (v) turn north on Burris Road to the entrance to the Travel Park, a total distance of approximately 2.13 miles (as opposed to a singular direct bridge bringing traffic essentially to the entrance of the Travel Park in the Before Condition).
b. From eastbound State Road 84, vehicles will: (i) access I-595 eastbound; (ii) select from various ramps at various points; (iii) proceed onto southbound U.S. 441 to the intersection of U.S. 441 and rerouted Oakes Road; (iv) travel on rerouted Oakes Road to Burris Road; and (v) turn north on Burris Road to the Travel Park. The total distance involved is approximately 1.56 miles (as opposed to a quarter of a mile on one, direct route in the Before Condition).