489 So.2d 1172 (1986)
DIVISION OF ADMINISTRATION, STATE OF FLORIDA, DEPARTMENT OF TRANSPORTATION, Appellant,
v.
Ness TRAILER PARK, INC., et al., Appellees.
No. 85-1779.
District Court of Appeal of Florida, Fourth District.
May 28, 1986.
A.J. Spalla, Gen. Counsel, and Franz Eric Dorn and Robert I. Scanlan, Appellate Attys., Tallahassee, for appellant.
*1173 Leon D. Black, Jr., of Kelly, Black, Byrne & Beasley, P.A., Miami, and Buckley & Bland, Fort Lauderdale, for appellees.
GLICKSTEIN, Judge.
The Florida Department of Transportation appeals an amended final judgment in a condemnation proceeding. We reverse in part, affirm in part, and remand for entry of judgment in accordance herewith.
In connection with the expansion of the Fort Lauderdale-Hollywood International Airport facilities, the Florida Department of Transportation (DOT) determined that it was necessary to acquire Parcel 106, owned by appellee, Ness Trailer Park, Inc., in order to build a new limited access road. When DOT filed a petition as to Parcel 106, pursuant to chapter 73 and/or a declaration of taking pursuant to chapter 74, Florida Statutes (1983), Ness filed an answer, claiming damages for all restrictions of ingress and egress to and from the rest of the Ness Trailer Park property. It also claimed special damages for loss of convenient access to the remaining land, and reserved the right to claim further damages and compensation as facts unfold.
Two months prior to trial by jury, DOT filed a motion in limine re defendant's appraisal, contending the damages Ness was claiming were caused, not by the taking, but by the overall design of the project. It then filed an amended motion in limine, which the trial court denied, ruling that the degree of impairment of access to the remainder of the Ness property was a jury question.
Prior to presenting its case, DOT indicated it wished "to object to all testimony claiming damages based on circuity of travel." The defense indicated that was the same motion as had been argued respecting impairment of access, and DOT was trying to get a rehearing on it. DOT said it merely wanted to put its position on record as it wished to exclude damages based on the closing of Southwest 33rd Street as part of the project, claiming there was a governmental right to block one end of the street, as was being done, as a matter of police power. DOT also wished to exclude all testimony concerning damages claimed for diversion of traffic  which may or may not be the same thing; and all testimony claiming damages because of the existence of the elevated I-595 interchange to the south of the remaining Ness property. The defense indicated there would be no such claims. The court indicated it would grant the motion to exclude evidence as to relocation of U.S. 1 and of lower Andrews Avenue, but would leave it to the jury to determine to what extent loss of access to 33rd Street resulted in damages. Counsel for DOT contested any entitlement to business damages, but stipulated that if such damages were legally proper their amount was $105,000.
During trial DOT moved to strike the testimony of Ness' two appraisers, because they could not separate damages to the remaining property caused by the taking from damages caused by the closing of 33rd Street. The motions were raised again on the ground the appraisals were based on overall impact of the project, not just on the effect of the taking of Parcel 106. The court denied all of these motions.
DOT sought special verdicts separating the different types of severance damages alleged, but the request was denied. At the charge conference the judge said Ness' proposed instruction seven incorporated Ness' proposed instructions eight and nine, and that she would therefore not give Ness' proposed instructions eight and nine. These instructions concerned the question of access. Later, when the jury returned with a question requesting the legal definition of "access," the judge read both the definition found at section 334.03(8), Florida Statutes (1983), and Ness' jury instructions eight and nine. DOT objected to the reading of these instructions.
The jury returned a verdict of $15 per square foot, or $314,685, for the land taken, and of $1.75 per square foot, or $209,069, for severance damages to Ness' remaining property. DOT's subsequent motion for new trial as to severance damages only was denied; and the trial court entered final judgment adopting the jury verdict, *1174 which it subsequently amended, on a motion by Ness, to reflect business damages also. This appeal followed.
The Ness Trailer Park property prior to the taking consisted of about three and one-fourth acres. The land taken was about half an acre along the western edge of the parcel.
The overall Broward County-DOT plan to enlarge the airport runways entailed elevating U.S. 1, relocating it somewhat eastward, and limiting access to it. The land taken from Ness was to be used to relocate an East Coast Railway embankment, railroad track and drainage ditch. The plan also called for interrupting Southwest 33rd Street just west of the north edge of the Ness property. The effect is that one cannot get to the Ness property on Southwest 33rd Street from the west, or leave it by going west. Ingress and egress on Southwest 33rd Street is wholly from the east. Formerly there was access both from the east and from the west, and Southwest 33rd Street was continuous.
The Ness property also borders on the east on South Andrews Avenue. This street merges with Southeast 6th Avenue near the property. Southeast 6th Avenue was formerly U.S. 1 but the new U.S. 1 is farther east. Southeast 6th Avenue runs into a relocated Eller Drive by which it is apparently still possible to enter the airport. There are three driveways from the Ness property on South Andrews Avenue, two of which are currently closed off by choice and could be reopened. Because of heavy traffic and the location of a traffic signal where South Andrews and Southeast 6th meet, the more southerly driveways are viewed as nonfunctional.
A resolution adopted by Broward County on January 3, 1984, states it is necessary to acquire Parcel Number 106 for the project of replacing existing airport facilities with expanded facilities, improving highway access, and relocating surface transportation facilities that otherwise would impede airport expansion and highway access improvement.
A resolution of DOT of March 30, 1984, confirming the necessity of building the relocated limited access U.S. 1 states acquisition of Parcel 106 is necessary to the highway relocation project.
Robert M. Gallion, an appraiser for DOT, had reported early on that as a result of the taking the per square foot value of the remaining parcel had diminished because (1) there was now a reduced potential to combine this property with adjacent properties in order to assemble a site fronting on a primary thoroughfare; and (2) the highest and best use had declined from being potentially commercial only, or commercial-industrial, to industrial only. Subsequently, Gallion reported that any diminution in the value of the property resulted from the relocation of U.S. 1 and not from the taking. DOT's landplanner admitted when cross-examined that the property's highest and best use prior to the taking was an airport-oriented commercial use.
There was testimony that, because of the changes in the road configuration, there were now either two routes from the property to the airport, or three routes. The appraisers for both sides agreed the highest and best use of the remaining Ness property had changed, but did not agree on what it was now suitable for.
The supplement to the record shows that the Ness property had been used as a trailer park for about thirty years. Ness claimed business damages as a result of the loss of the use of the property taken. At trial, DOT objected to this claim, arguing that although the trailer park was licensed as a motel, it was run more like an apartment house. There was testimony it was made up of trailers that belonged to Ness and were rented by the week. DOT's landplanner, Mr. McKay, admitted it was a transient lodging facility operated in the manner of a motel. The stipulated amount of business damages was based on the expectation the fixed expenses would remain approximately constant as the business wound down over a three-year period, while rental income fell off. There was no disagreement over the wind-down period.
The issues, restated, are:

*1175 1. WHETHER THE TRIAL COURT ERRED IN AWARDING SEVERANCE DAMAGES, BECAUSE THESE WERE NOT DIRECTLY RELATED TO THE TAKING, BUT WERE IN FACT FOR CIRCUITY OF TRAVEL AND OR DIVERSION OF TRAFFIC CAUSED BY THE CITY'S DECISION TO INTERRUPT A STREET, INDEPENDENTLY OF THE TAKING BY APPELLANT. We conclude that it did.
II. WHETHER THE TRIAL COURT ERRED IN AWARDING BUSINESS DAMAGES IN ADDITION TO COMPENSATION FOR THE LAND TAKEN AND SEVERANCE DAMAGES, BECAUSE AN AWARD FOR LOSS OF RENT IS DUPLICATIVE OF DAMAGES FOR REDUCED VALUE OF THE LAND REMAINING WITH APPELLEE. We conclude that it did not.

I
Appellant, DOT, contends the severance damages awarded appellee, Ness, were for circuity of travel and/or diversion of traffic, and under Florida law noncompensable. DOT cites statements of Ness' appraisers attributing most of the damage to the remaining Ness property to the closing of 33rd Street, and argues that because that closing is not directly a consequence of the taking of a portion of the Ness property, severance damages for reduced access cannot be awarded to Ness. In other words, DOT says the taking of a strip of land along the western edge of the Ness property was not in order to construct a limited access road, but to relocate a railroad bed.
Second, DOT argues that there was no effect of the taking on ingress to the Ness property from 33rd Street or on egress from the Ness property into 33rd Street. The taking involved a nominal amount of frontage on 33rd Street  less than five feet  and did nothing to any driveways or their connection with the street. Likewise the taking had no effect on getting in and out of the property from South Andrews Avenue, which is on the east side of the property.
Third, DOT says the closing of 33rd Street just west of the Ness property took place on the City's existing right of way, not on the property taken from Ness, and was done under police power  presumably protection of public safety. Damages are not available for the effects of police power activity of a public authority; and it is presumed that any potential impact, of the City's taking of the right of way, on abutting property, was taken into account at the time of the original taking, and compensation is not allowed again when a change is made in the right of way.
Fourth, DOT says it was the City, not DOT, that closed 33rd Street; therefore, if Ness has any claim arising from that closing it should be against the City, not against DOT.
Fifth, DOT contends that even if Ness can show diminishment of access to its property because of the interruption in 33rd Street, it has failed to show and cannot show special injury, as would be required to support compensation, but is in the same position as other property owners in the area from whom no property was taken.
Ness' arguments are as follows. First, that the cul-de-sac caused by the interruption of 33rd Street just west of the remaining Ness property was the result of the relocation of the railroad bed, embankment and drainage ditch, and the whole constellation of conduct of the public authorities was the direct result of a limited access project.
Second, Ness contends that because of the interruption of 33rd Street its property's access to the airport is diminished, and that in turn has caused a change of the highest and best use of the remaining part of the Ness property.
Third, Ness claims its damages resulted from a joint Broward County-DOT plan which encompassed the various actions which are inseparable from each other  construction of a limited access facility, the *1176 taking of a portion of the Ness property for relocation of the railroad, and the closure of 33rd Street.
Fourth, the plan was that of Broward County, the City of Fort Lauderdale and DOT, and they should be held jointly and severally liable.
Fifth, it contends that the jury was free to accept or not accept the testimony of DOT's experts that the neighbors and Ness were in the same boat as to the effect of the cul-de-sac on access.
Appellant DOT contends specifically that the trial court erred when it failed to grant DOT's motion in limine to exclude from evidence the portions of the appraisals obtained by Ness that pertained to severance damages. DOT says as a matter of law there could be no severance damages for loss of access unless there was a direct connection between the Ness land taken by DOT and either damages caused by the construction of the limited access highway, I-595, or damages resulting from the creation of a cul-de-sac just west of the Ness property on 33rd Street, which DOT classifies as police power action of the City of Fort Lauderdale.
The trial court denied DOT's in limine motion, indicating it was relying on State Department of Transportation v. Stubbs, 285 So.2d 1 (Fla. 1973), and that the deadending and cul-de-sac created that reduced Ness' access to the airport would be a jury question. DOT contends Stubbs is an inappropriate authority.[1]
We think it is necessary to read the exact language of the pertinent portion of the Stubbs opinion to determine whether Stubbs is applicable in the instant case:
A perusal of the record indicates Respondents' commercial property has been adversely affected to some degree by the loss of access resulting from their property being placed in a cul-de-sac, which was a part of the project to bring into existence Interstate 295. The availability of ingress and egress to their property that previously existed has now been seriously disturbed, if not destroyed. Ease and facility of access constitute valuable *1177 property rights for which an owner is entitled to be adequately compensated.
Whether the damage Respondents suffered is "different in kind" from that of their neighbors, whose lands were not condemned, is not entirely dispositive of the issue involved. The important question is whether there has been a substantial diminution in access as a direct result of the taking. What is "substantial" is a question of fact posing practical problems of proof for a jury's consideration. Where some right of access is still available, as would appear in the cause under consideration, it is for the jury to determine whether the resulting damages are nominal or substantial... .
The taking from Respondents involved a Section 338.04 limited access taking. A part of Respondents' property, including a portion of their former access rights to Firestone Road, was directly taken for limited access road purposes. They were not, of course, afforded direct access to the Interstate 295. In a situation of this kind where a portion of one's property and/or access rights to an existing road is taken for limited access road purposes, Section 338.04 as construed in the Anhoco case requires consideration by the jury of severance damages for loss of access rights. Respondents' situation is different from that of their neighbors along Firestone Road whose lands and/or access rights to Firestone Road were not condemned. In Respondents' case there was a direct physical taking of property and existing access rights for limited access road purposes; but there was no similar taking from their neighbors.
Id. at 3 (citations omitted). There is some ambiguity in the foregoing; and while we sympathize with DOT's desired reading that unless the actual physical taking was for the purpose of limitation of access, Stubbs is inapplicable, we believe that is not what the supreme court said in Stubbs, but it is what the supreme court now reads Stubbs to say, and perhaps what it meant to say.[2]
DOT maintains, moreover, that the facts of the present case put it in a class with Division of Administration, State Department of Transportation v. Capital Plaza, Inc., 397 So.2d 682 (Fla. 1981), rather than Stubbs. It also says Capital Plaza limits applicability of Stubbs to cases where the physical taking of a portion of the condemnee's property was for the purpose of causing the complained-of impairment of access. We think DOT is correct.[3]
In Capital Plaza the supreme court read Stubbs to say that severance damages under section 338.04, Florida Statutes (1971), are to be put before the jury where there is a direct physical taking of property for the construction of a limited access road. Id. at 683. The Capital Plaza court stated as its holding "that landowners have no compensable interest in traffic flow and that, in order to receive severance damages, any complained-of impairment must result directly from the taking." Id.
The whole severance damages issue in the present case (as well as the subissues regarding the motion in limine and the instructions to the jury) hangs, then, on whether the actual physical taking from Ness' land was directly involved in the obstruction of access or in the building of a limited access road. By analogy to the *1178 cases we hold the answer must be in the negative, though there is a great temptation to say, "Yes."[4]
Appellant presents other authority to show that it is not permissible to apply severance damages for loss of access merely because the property condemned was an integral part of a comprehensive project. In Jacksonville Expressway Authority v. Milford, 115 So.2d 778 (Fla. 1st DCA 1959), the landowner, part of whose land was taken, sought severance damages because of a change of grade in the preexisting right of way, and tried to tie the physical taking to the loss of access by arguing the taking was an integral part of a large project. The appellate court rejected this. It said the claim could be asserted only if the grade change occurred on the land taken from the condemnee, reiterating that grade changes on an already existing right-of-way do not produce compensable damages. In the instant case, any injury to Ness' access was not the result of a blockage occurring on the land taken from him, but of a blockage on the preexisting roadway, Southwest 33rd Street. Severance damages for reduction of access would thus not be available, according to Milford.[5]
*1179 There was no basis in law for letting the jury hear testimony respecting severance damages purportedly because of loss of access; nor was the basing of such damages on the overall impact of the comprehensive project permissible. The severance damages testimony should have been barred, at least when the trial had progressed to the point when the bases for the claim had become clear, because the testimony was based on the reduction in value of the property based upon the lower "best and highest use" that purportedly resulted from the effect of the entire comprehensive project, and not from the mere taking of Parcel 106 and any direct obstruction of access resulting therefrom.[6]
*1180 It may be that in the present case it would have been premature at the time of DOT's motion in limine to determine whether Ness' expert testimony concerning severance damages should be stricken. It could have appeared at that time as though the land actually taken was used to limit access to the remaining Ness property. In that event, the court would not have realized that severance damages for loss of highest and best use were not available under the facts and circumstances of this case.
Albeit the motion in limine arguably should not have been granted, it not yet being clear whether the facts support a cause of action for severance damages, later in the trial, the appraisers' testimony on loss of value due to change of highest and best use should have been stricken, or DOT's motion for a new trial on the issue of severance damages, should have been granted. The instructions based on Stubbs should not have been given, and giving them was error, when the directly taken property was not used for the purpose of limiting access; and when the proofs were not sufficient to put this case in any of the three categories of situations in which this type of damages may be granted in Florida. Had the special verdict forms requested by DOT been granted, we could tell what damages, if any, were granted under existing law and which were not. But the trial court denied the special verdict forms.

II
The second issue concerns the propriety of the court's award, to the condemnee, of business damages. The state attacks this award on the grounds (1) that rental income generated from real estate is not income from the operation of a business, the loss of which can result in compensable business damages; and (2) that award of such damages results in double recovery.
Severance damages, if any are caused, are considered to be a part of the just compensation required to be given for public taking of private property, pursuant to our constitution. E.g., Daniels v. State Road Department, 170 So.2d 846, 851 (Fla. 1964). Business damages, on the other hand, are regarded as being a matter of statutory largesse. See State Road Department v. Abel Investment Company, 165 So.2d 832, 833 (Fla. 2d DCA 1964); Section 73.071(3)(b), Florida Statutes (1983), both implements the constitutional requirement for paying severance damages when incurred and provides for business damages when the DOT or other public authority condemns a portion of one's property and there is damage to or destruction of an established business of more than five years standing. Severance and business *1181 damages are both available in appropriate cases.
Case law indicates that if a business is totally destroyed because of a taking, not only may there be an award for lost profits, but even for costs involved in moving, selling one's equipment, and loss of good will. See Mulkey v. Division of Administration, State of Florids, Department of Transportation, 448 So.2d 1062, 1066 (Fla. 2d DCA 1984).
In the instant case there was a stipulation as to the amount of business damages if Ness was entitled to such damages; but DOT consistently took the position that such damages should not be granted.
The first argument presented by DOT is that Ness' rental operations on the property do not constitute a business whose loss of rents due to the taking must be compensated. Secondly, DOT argues that because the severance damages were calculated based on the highest and best use, involving a much higher value per square foot, rather than based on the value of the property as a rental trailer park, there is duplication between the severance damages and the business damages.
DOT quotes 4 Nichols on Eminent Domain § 12.3122 (Rev.3d Ed. 1985) to the effect that if property is rented for the use to which it is best adapted, its value can best be determined by capitalizing the actual current rent at the rate customarily applied locally. This statement hardly leads to the notion that to award severance damages on another basis and yet award business damages for rent lost is somehow duplicative. The statute permits both severance damages  if suffered  and business damages, if proven. It does not say the condemnee may have one or the other, but not both. See Glessner v. Duval County, 203 So.2d 330 (Fla. 1st DCA 1967) (appellants may claim both business and severance damages; if they turn out to be identical, double compensation will be disallowed.)
Moreover, logically if one is compensated for decrease in the value of one's remaining land resulting from the taking of a portion of the original parcel, how does that repay one for the loss of income that also results from the taking? No matter how one calculates the severance damages, those are compensation for reduction in value of the condemnee's remaining land, and not for damages to his business.
DOT seems to think Ness had to choose between severance damages and business damages. This is patently not so according to the condemnation statute. There is nothing inconsistent about being paid for the land's loss of value and also for a loss of income from a business conducted thereon. There is no requirement of an election of remedies if the remedies are not inconsistent. Monco of Orlando, Inc. v. ITT Industrial Credit Corporation, 458 So.2d 332, 334 (Fla. 5th DCA 1984).
We find no law that puts rental income in a class with value of annual crops when a property is used for agriculture, as income derived from the use of the property itself and therefore not a proper basis for business damages. From another perspective, it could be reasoned in the instant case that if, as was apparently the case, the mobile homes were not affixed to the land so as to be regarded as real estate improvements, rental income was at least in part generated from other than use of the land itself.
We believe there is no merit to DOT's arguments, for which it fails to cite authority directly on point. Since the amount of business damages was stipulated to by the parties provided those damages were allowable, we conclude that aspect of the judgment should be affirmed.
DOWNEY and GUNTHER, JJ., concur.
NOTES
[1] In Stubbs the trial court had ruled that evidence of severance damages in connection with a DOT condemnation would be excluded. The property being condemned was in connection with the building of 1-595, a limited access highway. Because of the road construction the public authorities considered it necessary to abandon a portion of Firestone Road, a northsouth road at the front of the condemnees' property. Firestone Road was to be closed to both northbound and southbound traffic just south of the condemnees' property's northern boundary. The same road was also to be closed to traffic at a point three blocks south of the condemnees' southern boundary, because the old Firestone Road would dead-end at I-295, and there was to be a relocated Firestone Road. As a result of all this relocation and construction of roads, access to the condemnees' property by automobile from the east would be only by taking an overpass over the new interstate.

As already stated, the trial court had ruled the condemnees could not recover severance damages. The district court reversed, and the Florida Supreme Court agreed with the district court.
The Stubbs holding depends in great part on section 338.04, Florida Statutes, which sets the rules for compensation for the taking of "property and property rights for limited access facilities and service roads, including rights of access." The supreme court had already determined in Anhoco Corporation v. Dade County, 144 So.2d 793 (Fla. 1962), that that statute specifically requires compensation for a destroyed right of access.
In Stubbs the DOT argued that the condemnees' access right had not been destroyed because access still existed by use of the overpass. The supreme court considered this an "overly restrictive" interpretation of Anhoco. The supreme court said an owner is entitled to adequate compensation for loss of the valuable property rights of ease and facility of access. 285 So.2d at 3.
The supreme court in Stubbs distinguished the owner's property interest in "access" from any right to "traffic flow," which was held to be noncompensable in Jahoda v. State Road Department, 106 So.2d 870 (Fla. 3d DCA 1958). The supreme court said it was permissible to introduce evidence, at trial, of severance damages resulting from physical impairment of access, as distinguished from impairment of traffic flow.
The catch, according to DOT, is that the basis for the Stubbs holding is that there was an actual taking from the condemnees of a physical portion of their property directly for limited access road purposes. DOT claims that only because the real property taken in Stubbs was used for limited access road purposes were severance damages available.
[2] The language of the supreme court in the third paragraph we have quoted is living proof that the grammatical purists are right; and that "and/or" is a monstrosity. Thanks to the use of "and/or," that paragraph says that taking of land directly for the limited access road or taking of a substantial amount of one's access is a sufficient basis for compensation under section 338.04; and that evidence of severance damages should be permitted to be placed before the jury so that it may determine whether the impact on access was substantial, and if so, what was the value of the damages.
[3] We would point out the Capital Plaza court itself distinguished that case from Stubbs because no limited access facility governed by section 338.04 was involved in Capital Plaza; rather Capital Plaza concerned only building of a median in an existing roadway, making left turns directly into appellee's property no longer possible. DOT had obtained property by condemnation from Capital Plaza, but that was used to widen the road, and not for creating the median.
[4] First, the resolution of the Secretary of Transportation that provided the predicate for the condemnation of parcel 106 says it is needed for the limited access road. Secondly, the actual use of the land was for relocation of a railroad embankment, railroad track, and drainage ditch in connection with the larger project, and the 33rd Street obstruction is the barest extension from the land taken from Ness. However, if the rule is to be taken literally  as, apparently it is  one must admit no part of the limited access highway was being built on the land taken from Ness, and the obstruction to 33rd Street occurred on the existing roadbed and not on the land taken from Ness. Thus Stubbs does not apply in the present facts and circumstances, and according to the stated holding in Capital Plaza, severance damages for impairment of access are not available to Ness.
[5] Besides takings for the purpose of building limited access roads or limiting access to existing ones  which the present facts do not fit  there are two other types of situations in which compensation is available. One is like that described in Benerofe v. State Road Department, 217 So.2d 838 (Fla. 1969), where access is lost because the public authority erects a physical barrier impeding ingress or egress; and a second is where there has been substantial diminishment of access by the closing off of principal access points of the landowners property, as in Pinellas County v. Austin, 323 So.2d 6 (Fla. 2d DCA 1975).

In Benerofe the court found that severance damages for loss of access, merely because the Road Department had condemned some of Benerofe's land, could not be considered, when the taking was not for a limited access road, and Benerofe could not show that the State was building a physical barricade that would directly impede ingress or egress to or from the road. Cf. Division of Administration, State Department of Transportation v. Jirik, 471 So.2d 549 (Fla. 3d DCA 1985) (construction by appellant of retaining wall along entire edge of lot abutting road, making access possible only via adjoining lot, was proper basis for inverse condemnation). In Austin, the county, by resolution, vacated certain portions of platted streets that led to appellees' property from the north and west. The former street from the north contained a dirt road that the appellees had used for access to their property. It was not clear whether a remaining totally unimproved platted street near the northeast corner of appellees' property actually abutted it. The only other access was by a street along the southern border of the property. To get to the bulk of the parcel and the appellees' home by that route, it would be necessary to cross a canal on a small wooden bridge that would not support a fire truck or a garbage truck.
In finding in favor of Austin, the appellate court recited the applicable law. The court said that when a public body vacates a street it becomes liable for compensation to those who have been deprived of their right of access to their abutting property. Such landowners, must show, however, that they have suffered special damages not common to the general public. Mere loss of the most convenient method of access is not sufficient to justify compensation, when suitable access remains available by another street, even if that route is longer. In Austin, the appellate court determined the quality of the owners' access had been substantially diminished because the bridge on the other existing route was of only limited use, and the other platted street, even should it be found to be adjacent to the property, was totally unimproved, and much work would also have to be done to clear parts of the owners' property if that street were to be used for effective access. See also City of Port St. Lucie v. Parks, 452 So.2d 1089 (Fla. 4th DCA 1984) (So long as property owner still had suitable access, albeit by longer route, mere loss of most convenient method of access did not result in compensable damages.) None of the three possible bases for severance damages due to loss or reduction of access exists in the present case. Ness does not claim, nor is it true, that egress or ingress from any street to the property has been diminished; no driveway or the like has been blocked or impeded. It is evident that though closing of 33rd Street is an inconvenience, adequate access in the broader sense continues to exist, in spite of the blockage of 33rd Street just west of Ness' remaining property; and the physical taking from Ness was not for the direct purpose of the blockage of 33rd Street nor for the building of a limited access highway.
[6] Appellee shows us law from another jurisdiction, notably Falls Riverway Realty, Inc. v. City of Niagara Falls, New York, 732 F.2d 38 (2d Cir.1984), and Chemung Canal Trust Company v. State, 90 A.D.2d 889, 456 N.Y.S.2d 518 (1982). Ness claims these cases stand for the principles that suitability of access is determined in relation to the access needs if the property is to be put to its highest and best use, and that what is the highest and best use and what access is suitable for it is a question of fact.

We do not think Chemung Canal Trust Company or Falls Riverway Realty states the law of Florida, if these principles are taken to apply broadly whenever a claimant contends a public authority's action affecting access has infringed on highest and best use of the claimant's property. To adopt the law of Chemung Canal Trust Company, we suggest, would be the function of the Florida Supreme Court, not this court.
In Chemung Canal Trust Company, the state had eliminated the bank's access to one street, but left it with access to three other streets. The bank sought consequential damages for loss of access to the one street, but the trial court granted the state's motion to dismiss for failure to state a cause of action. The state claimed what the bank sought was noncompensable inconvenience to its business.
One wonders how the New York courts would apply the principle respecting highest and best use to the present case, given its very different facts. In Chemung, the property was already occupied by a six-story bank and office building, and the bank's drive-in facility had been entered from the street now closed and exited by a different street. There was an affidavit that drive-in facilities are essential to maintaining competitiveness in commercial banking in upstate New York; that explained why the remaining access routes were unfeasible for the existing drive-in facilities, and that averred the bank had been forced to buy additional property and make extensive improvements on it, in order to provide drive-in teller service. The appellate court said such evidence could support a finding that a bank with drive-in teller facilities was the highest and best use for the property, and that the remaining access after the deprivation of access to the one street was unsuitable. It is interesting that the Chemung court distinguished the case of La Briola v. State of New York, 36 N.Y.2d 328, 368 N.Y.S.2d 147, 328 N.E.2d 781 (1975), wherein the court of claims had found the loss of highest and best use to have been attributable to relocation of a main highway that had passed the claimant's property, rather than loss of access arising from closing of the former highway, the intermediate court had disagreed, but the state's highest court agreed with the trial court.
A more complete summary of La Briola seems desirable. The claimant's property had formerly fronted on a highway which the state had now relocated. A portion of the property had been zoned retail but was only partially developed. After the highway's relocation, involving taking of a small part of the property and no interest of the claimant in the roadbed, the property remaining to the claimant was left with a reduced corner frontage on the old road and short spur connection to the relocated, new road. Because of the reduction in frontal exposure to a lighter stream of traffic, the portion of the property formerly zoned retail was considered of lesser value and was rezoned light industrial, rather than retail. The question the state's highest court addressed was whether the claimant's remaining property was reduced in value because of loss of suitable access, which is compensable, or because of diversion of highway traffic, which is noncompensable. As already indicated, the court of claims had found the latter to be the case, and denied what we might call severance damages; the intermediate appellate court had modified the judgment and awarded consequential damages for reduction of the property's highest and best use. The state's highest court agreed with the court of claims. It found that the facts of the case supported the conclusion that the noncompensable diversion of traffic, and not loss of suitable access had destroyed the old highest use for the property. The state was not obliged to provide access for the former highest and best use of the property, but only for the surviving use.
It is arguable that even in New York under the facts and circumstances of the present case the jury verdict on severance damages would be overturned on the basis the evidence was insufficient to support it. It is noteworthy that in La Briola there was a direct taking from the claimant, and the land that was taken apparently was used directly in the highway relocation. Since La Briola appears still to be good law in New York, the meaning of Chemung is obviously only that questions of highest and best use and suitability of access are for the finder of fact. That does not mean that the jury verdict can never be reversed.
It is possible that suitability of access for the highest and best use is a question of fact in New York only when there is evidence of outright loss of access to a street, or where there has also been a direct taking for the purpose of limiting access. La Briola indicates a decline from highest and best use because of state action when the loss is merely because of diversion of traffic is noncompensable. (Note that in La Briola there was also a direct taking in connection with the reduction of access, which I believe is not the case here.)
Appellee also claims the facts of the present case are on all fours with the New York case of Priestly v. State of New York, 23 N.Y.2d 152, 295 N.Y.S.2d 659, 242 N.E.2d 827 (1968). We do not think that is accurate. In Priestly there had been a direct taking for highway and bridge approach purposes, and the result was loss of direct access from the bridge approach road to a substantial portion of the property, leaving only a serpentine route for access. This evidence was found adequate to support the finding that access after the taking was unsuitable for the residential use to which the property was best suited. Unless the taking here can be considered to have been for the very purpose which resulted in limitation of access, which we do not think is the case, Priestly cannot be viewed as on all fours with the present case. Also, it is clear in Priestly that the sole route remaining for access to the remaining property was not merely circuitous, but clearly unsuitable. This is not so in the present case.