616 So.2d 1000 (1993)
CITY OF TALLAHASSEE, Appellant,
v.
William W. BOYD, Weaver Oil Company, et al.
No. 91-810.
District Court of Appeal of Florida, First District.
February 17, 1993.
Rehearing Denied May 14, 1993.
*1001 Edwin R. Hudson of Henry, Buchanan, Mick & English, P.A., Tallahassee, for appellant.
Alan E. DeSerio of Brigham, Moore, Gaylord, Wilson, Ulmer, Schuster & Sachs, Tampa, Joe W. Fixel, and A.J. Spalla, Tallahassee, for appellees.
PER CURIAM.
The City of Tallahassee (City) appealed a final judgment entered on a jury verdict awarding business damages to Appellee Weaver Oil Company (Weaver Oil). Having determined that Appellees failed to allege a basis for an award of statutory business damages, we reverse and remand with instructions for the trial court to enter a directed verdict and a judgment allowing no business damages. See Section 73.071(3), Florida Statutes (1989); Palm Beach County v. Tessler, 538 So.2d 846 (Fla. 1989).
This case originated as an eminent domain action wherein the City condemned certain real property as part of the widening of Ocala Road. Parcel 142 is a 14-foot wide, 176-foot long strip of land bordering the Ocala Road right-of-way. Weaver Oil leased the parent property, from which Parcel 142 was taken, and operated a gas station/convenience store doing business as Hogly Wogly. The property is located at the southeastern corner of Ocala Road and Tennessee Street. The City's Ocala Road project and related construction resulted in the following: 1) Parcel 142 was taken, allowing the widening of Ocala Road and the right-of-way. 2) The Ocala Road entrance to the Weaver Oil leasehold was widened from about 72 feet to 91 feet. 3) A utility pole was relocated and a portion of the curb and grass traffic control island at the southeastern corner of Ocala Road and Tennessee Street was reconstructed on existing public right-of-way, not on the land acquired by condemnation. 4) The reconstruction of the traffic control island caused that portion of public right-of-way available for Weaver Oil's use, as the westerly of two Tennessee Street entrances, to be reduced from 44 feet to 27 feet at its narrowest point, although greater width was maintained at the mouth of the entrance. The easterly entrance on Tennessee Street was undisturbed.
Prior to the trial, the City entered into a Stipulated Partial Final Judgment with the fee title owner and Weaver Oil, whereunder the City agreed to pay $77,300 "in full payment for the property (designated Parcel Nos. 142, 742 herein) taken and for all other damages of any nature, with the exception of statutory business damages and attorney's fees and costs." Parcel 742 was a temporary construction easement. That agreement was approved by the trial *1002 court on February 1, 1991, and recognized that the sole unresolved issue was statutory business damages claimed by Weaver Oil pursuant to section 73.071(3)(b), Florida Statutes (1989).
Throughout the proceedings below, Weaver Oil asserted its entitlement to business damages as a result of an alleged loss of access caused by the narrowed westerly Tennessee Street entrance. There was testimony that the westerly entrance was the main entrance. The City contended that business damages were not recoverable for a loss of access unless that loss was attributable to the loss of use of the physical property condemned, Parcel 142, and that alleged damages resulting from the reconstruction of the traffic control island were not recoverable because the construction occurred on existing right-of-way.
The City objected to the requested jury instructions and proposed verdict of Weaver Oil and requested its own, based on the language in section 73.071(3)(b). Over the City's objections, the trial court used Weaver Oil's proposed verdict form and granted an instruction that Weaver Oil was entitled to be compensated for claimed business damages resulting from the alleged loss of access caused by the narrowing of the westerly Tennessee Street entrance, without the requirement that the loss result from the denial of the use of the physical property so taken.
At the conclusion of Weaver Oil's case-in-chief, the City moved for a directed verdict, which was denied. At the conclusion of the trial, the City renewed its motion for a directed verdict and alternatively moved for judgment non obstante veredicto, which motions were denied. The jury returned a verdict finding business damages of $94,000 and judgment was entered on that verdict.
Where appropriation of less than the entire property is sought, as occurred here, section 73.071(3)(b) requires the jury to determine the amount of compensation to be paid for "any damages to the remainder caused by the taking, including, ... the probable damages to such business which the denial of the use of the property so taken may reasonably cause; ..." In Division of Admin., Dep't of Transp. v. Ness Trailer Park, Inc., 489 So.2d 1172, 1180-81 (4th DCA), rev. den., 501 So.2d 1281 (Fla. 1986), the appellate court recognized that "[s]everance and business damages are both available in appropriate cases" pursuant to section 73.071(3)(b), so long as an award of both will not result in a duplicative recovery. The City seeks reversal of the trial court's decision, on the grounds that damages for loss of access are limited to severance damages, and that the parties' stipulation settled any such claim.
"Business damages" are "in the nature of lost profits attributable to the reduced profit-making capacity of the business caused by a taking of a portion of the realty or the improvements thereon," LeSuer v. State Road Dep't, 231 So.2d 265, 268 (Fla. 1st DCA 1970), and are considered a matter of statutory largesse. Tampa-Hillsborough County Expressway Auth'ty v. K.E. Morris Alignment Service, 444 So.2d 926, 928 (Fla. 1983); Ness Trailer Park, 489 So.2d at 1180. "Severance damages," on the other hand, are generally measured by "the reduction in value of the remaining property." Kendry v. Div. of Admin,, Dep't of Transp., 366 So.2d 391, 393 (Fla. 1978); Mulkey v. Div. of Admin., Dep't of Transp., 448 So.2d 1062, 1065 (Fla. 2nd DCA 1984). Severance damages "are considered to be a part of the just compensation to be given for public taking of private property," pursuant to the Florida Constitution. Ness Trailer Park, 489 So.2d at 1180; Daniels v. State Road Dep't, 170 So.2d 846, 851 (Fla. 1964). See Fla. Const. art. X, § 6(a).
We agree that severance damages are not an issue in the case sub judice because the parties stipulated to a partial final judgment resolving that question. The issue is whether the trial court erred in not granting the City's motions for a directed verdict or judgment n.o.v. on Weaver Oil's claim of statutory business damages resulting solely from the alleged taking of access rights on Tennessee Street. The broader legal question is whether the restriction of access along the northerly boundary of *1003 Weaver Oil's property constituted a taking through denial of the use of "property" pursuant to section 73.071, for which business damages are awardable.
The City argues the prevailing law precludes recovery of business damages for a loss of access unless the physical property that provided the access is taken. Parcel 142 was not used in the construction of the redesigned and narrowed entrance that fronted on Tennessee Street, and no testimony or evidence was presented suggesting otherwise. The driveway at the westerly entrance on Tennessee Street, and the construction that caused the driveway to be narrowed, do not lie on Parcel 142 or on any other real property leased by Weaver Oil, but on property that was and still is public right-of-way.
Weaver Oil relies on decisional law holding governmental action causing a substantial loss of access to one's property is compensable, even though the physical property is not appropriated. See, e.g., Tessler, 538 So.2d at 849; State Dep't of Transp. v. Lakewood Travel Park, Inc., 580 So.2d 230, 233 (Fla. 4th DCA 1991) ("access" is a property right in Florida). In Tessler, the property owner claimed damages arising from construction of a retaining wall along the main thoroughfare providing access to the owner's business, a change that necessitated customers' traveling a circuitous route to get to the business.
The Florida Supreme Court acknowledged the right to be compensated in an inverse condemnation proceeding where "governmental action causes a substantial loss of access to one's property even though there is no physical appropriation of the property itself." Id. 538 So.2d at 849. No taking occurs where governmental action reduces the flow of traffic on an abutting road, because "a landowner has no property right in the continuation or maintenance of traffic flow past the property." Division of Admin. v. Capital Plaza, Inc., 397 So.2d 682, 683 (Fla. 1981); State Dep't of Transp. v. Stubbs, 285 So.2d 1, 4 (Fla. 1973). The court in Tessler noted "[t]he extent of the access which remains after a taking is properly considered in determining the amount of the compensation. In any event, the damages which are recoverable are limited to the reduction in value of the property which was caused by the loss of access." 538 So.2d at 849. That language essentially articulates the test for severance damages. Mulkey; Kendry. Appellees did not pursue that avenue here, but instead sought statutory business damages in an eminent domain action.
The court in Tessler considered only the question of whether the restriction of access may constitute a taking sufficient to support an award of severance damages. Significantly, that court distinguished a claim for business damages, which "continue to be controlled by section 73.071." Id. 538 So.2d at 849-50. That is, the right to business damages is not constitutionally based, but instead depends on legislative authorization. Department of Agric. & Consum. Serv. v. Mid-Florida Growers, Inc., 570 So.2d 892, 899 (Fla. 1990); Morris Alignment, 444 So.2d at 928; Jamesson v. Downtown Devel. Auth'ty, 322 So.2d 510, 511 (Fla. 1975); City of Tampa v. Texas Co., 107 So.2d 216 (2d DCA 1958), cert. dism., 109 So.2d 169 (Fla. 1959).
At the heart of the case sub judice, both at trial and on appeal, is disagreement over whether the alleged restriction in access meets the statutory standard for business damages resulting from "denial of the use of the property so taken." Tessler did not expressly resolve that question, but merely distinguished business damages as subject to the statute. From our reading of Tessler, we are convinced that "Tessler does not appear to create any right to business damages attributable to a loss of access as compared to a loss of physical property." State Dep't of Transp. v. Weggies Banana Boat, 576 So.2d 722, 725 (2d DCA 1990) (Altenbernd, J., concurring), rev. den., 589 So.2d 294 (Fla. 1991). In the context of argument on the City's motion for a directed verdict at trial, Appellees acknowledged that "[t]he real property taken is not the issue here." The City's position is strengthened even further by the rule of construction providing that "any *1004 ambiguity in section 73.071(3)(b) should be construed against the claim of business damages, and such damages should be awarded only when such an award appears clearly consistent with legislative intent." Morris Alignment, 444 So.2d at 929.
Appellees' reliance on Glessner v. Duval County, 203 So.2d 330 (Fla. 1st DCA 1967) is misplaced because of key factual differences. In that case, the owner had acquired a perpetual easement over another person's lands as part of the purchase of the adjoining property. The owner's claim for business damages was based solely on governmental interference with the owner's easement of access over another's lands, thereby cutting off the owner's right of access to the property on which the business was conducted. The property over which the easement had been acquired was specifically identified in the petition. In the instant case, however, the loss of access and business damages claimed by Weaver Oil did not result from the loss of use of the specific property described in the petition and acquired in the eminent domain proceedings. In fact, the obstruction that narrowed the driveway was constructed by the City on existing public right-of-way. Our holding in Glessner was based squarely on the well-established principle that the interest in the dominant tenement in an easement is a property interest. Thus, the governmental interference with the businessman's property fell within the plain meaning of section 73.071(3)(b). See id. at 332 & 335; Walters v. State Road Dep't, 239 So.2d 878 (Fla. 1st DCA 1970).
Ness Trailer Park is distinguishable as well, for the business damages portion of that case dealt primarily with the issue of whether the award of business damages was duplicative of the trial court's award of severance damages. Id., 489 So.2d at 1175. That is unlike the case here, because the restriction of the right of access in Ness Trailer Park was caused at least partly by an actual taking of a portion of the appellee's property. Id. at 1174.
Appellees relied on the language in Stubbs, 285 So.2d at 2, in which the Florida Supreme Court noted that the rationale for awarding compensation for loss of access in eminent domain proceedings is that "`property' is something more than a physical interst [sic] in land." Through "a gradual process of judicial liberalization," the concept of "property" has embraced "an incorporeal interest such as the acquisition of access rights." Id. See Stoebuck, "The Property Right of Access Versus the Power of Eminent Domain," 47 Tex.L.Rev. 733 (1969).
We find the quoted language from Stubbs does not afford Appellees a basis of relief here, however, because of the subsequent language from the same court in Tessler acknowledging the right compensation through an inverse condemnation proceeding when governmental action substantially diminishes access to one's property, even absent any physical appropriation of the property itself. 538 So.2d at 849. As we recognized previously, the Tessler court expressly stated that section 73.071 still controls business damages in an eminent domain action. Id. at 849-50.
Nevertheless, because the disputed language in Tessler is arguably susceptible to other interpretations, we certify the following question to the Florida Supreme Court:
DOES SECTION 73.071, FLORIDA STATUTES, PERMIT A CLAIM FOR STATUTORY BUSINESS DAMAGES FOR AN ALLEGED SUBSTANTIAL IMPAIRMENT OF ACCESS RESULTING FROM GOVERNMENTAL CONSTRUCTION ON EXISTING RIGHT-OF-WAY ABUTTING THE OWNER'S PROPERTY, WHERE NO LAND IS TAKEN?
The rules of statutory construction, and the supporting decisional law, compel us to hold that the trial court erred, as a matter of law, in failing to grant the City's motion for a directed verdict, and in subsequently sending to the jury the determination of business damages.
REVERSED and REMANDED, with instructions.
ERVIN and MINER, JJ., concur.
SHIVERS, DOUGLASS B., Senior Judge, dissents with written opinion.
*1005 SHIVERS, Senior Judge, dissenting.
I would affirm the judgment of the trial court. The City appealed a final judgment entered on a jury verdict awarding statutory business damages to Appellee Weaver Oil. See section 73.071, Florida Statutes (1989); Tessler, 538 So.2d at 846.
In its Answer, Weaver Oil alleged and claimed business damages caused by the substantial impairment of its right of access across existing public right-of-way that served as a portion of one of its two Tennessee Street driveways. At trial and on appeal, Weaver Oil never asserted that business damages were caused by the loss of use of the physical property described in the petition and acquired by the City. The City argues that the alleged business damages must be demonstrated to have resulted from the loss of use of Parcel 142, the property along Ocala Road that is described in the First Amended Petition in Eminent Domain.
It follows that if the City is correct, then the trial court should have granted the motion for a directed verdict, and the majority opinion is correct in reversing and remanding. However, if Weaver Oil is correct in stating that section 73.071(3), Florida Statutes (1989), permits a party to recover business damages caused also by factors other than the denial of the use of the physical property described in the petition, then affirmance of the order denying the motion for a directed verdict would be proper, and a second issue would be raised as to whether competent substantial evidence supports the jury's verdict.
Section 73.071(3)(a) provides that in eminent domain trials, "[t]he jury shall determine solely the amount of compensation to be paid, which compensation shall include ... [t]he value of the property sought to be appropriated." Where less than the entire property is to be appropriated, as occurred here, the statute requires the jury to determine compensation for "any damages to the remainder caused by the taking, including, ... the probable damages to such business which the denial of the use of the property so taken may reasonably cause; ..." Section 73.071(3)(b) (emphasis added). In Ness Trailer Park, 489 So.2d at 1180-81 the Fourth District Court recognized that "[s]everance and business damages are both available in appropriate cases" pursuant to section 73.071(3)(b).
Weaver Oil maintains that the impairment of an owner's access to the abutting roadway may serve as the basis for both severance and business damages.[1] The City contends that the statutory language about "the property so taken" refers to the physical land only. However, in Stubbs, 285 So.2d at 1, the Florida Supreme Court recognized that property can be something more than just a physical interest in land.
Referring to Stubbs, the Supreme Court in Tessler acknowledged the "gradual process of judicial liberalization of the concept of property ... to include the `taking' of an incorporeal interest such as the acquisition of access rights resulting from condemnation proceedings." 538 So.2d at 848. Tessler further indicates that "the right of access is a property right which appertains to the ownership of land." Id. Weaver Oil asserts that Tessler stands for the proposition that a claim for business damages is permitted under section 73.071(3)(b), when the statutory criteria are established and the damages to the business arise from the denial of the right of access so taken. It is argued that Appellees proved, by competent substantial evidence at trial, that the City's reconstruction activities within the existing right-of-way on Tennessee Street constituted a "taking" due to the substantial impairment of Weaver Oil's easement of access. That the remaining access is no longer fully suitable for the use for which the property was being utilized seems to inhere in the jury's verdict in favor of Weaver Oil.
It is a fundamental rule of statutory construction that a court must endeavor to avoid giving section 73.071 an interpretation that will lead to an absurd result. *1006 Morris Alignment Serv., Inc., 444 So.2d at 927. Weaver Oil contends that the City's interpretation of "property" only as physical land leads to such an absurd and unfair result. It is argued that a governmental body could erect, within the abutting roadway, a barrier effectively landlocking an owner's property and business. Although the owner could allege a taking of the "property" right of access to claim severance damages to the remaining land, the taking of the "property" in the form of an easement of access could not, under the City's interpretation, justify a claim of statutory business damages based on "denial of the use of the property so taken."
Weaver Oil asserts that this unintended result is avoidable if several of our decisions are followed, beginning with Glessner, 203 So.2d at 330, which the majority opinion attempts to distinguish on the facts. In that case, the owner's claim for damages was based solely on governmental interference with a portion of his perpetual easement of access over another person's lands, thereby cutting off the owner's right of access to the property on which he conducted business. As in the City's reconstruction activities on Tennessee Street in the case sub judice, no land was taken from the owner in Glessner. We reversed the trial court's denial of the opportunity for the owner to present his claims for severance damages to the lands on which the business was located, and statutory business damages for the damage to the business. Id. at 334-35. Glessner, which was decided pursuant to a predecessor statute, is consistent with the more recent Florida decisions enlarging the definition of property to include rights of access, and it supports the argument presented by Weaver Oil.
Weaver Oil relies also on Walters, 239 So.2d at 878, in which the condemnor took the front 51 feet of the owner's property for the construction of a drainage ditch. Prior to the taking, the owner operated a store, and vehicles could drive in to park from the street at any point along the frontal property line. The taking of the strip of land did not cause the problem of which the owners complained, and the trial court refused to permit the jury to consider and award business damages. We reversed, finding that the owner was entitled to recover both severance and business damages. Id. at 882. Arguably, however, Walters is distinguishable in that the owner's physical land was condemned in the action that led to claims for both kinds of damage. In Bryant v. Dep't of Transp., 355 So.2d 841, 843 (Fla. 1st DCA 1978), we acknowledged by implication that the owner's claims for severance and business damages were predicated on the difficulty of getting on and off the remaining land. See Fla. Eminent Domain Pract. & Proc., § 9.28 (4th ed. 1988).
The City relies in part on the concurring opinion in Weggies Banana Boat, 576 So.2d at 722, where a property owner alleged that the state's modification of the highway adjacent to the place of business had resulted in a 23-foot wall and roadway obliterating the visual and physical accessibility of motorists passing the premises. The jury determined that the owner was not entitled to compensation for claimed business damages, and the Second District Court held that the evidence supported the jury's decision. In dicta, the appellate court noted that "damages relating to access and visibility are more akin to severance damages than to business damages, ..." Id. at 724. The City asserts that if Appellees have any claim at all, it lies in the form of severance damages that should be presented in an inverse condemnation proceeding, with evidence of a reduction in value of the property resulting from the diminution of access. The City points to the following language from Weggies Banana Boat: "Tessler does not appear to create any right to business damages attributable to a loss of access as compared to a loss of physical property." Id. at 725. Weaver Oil responds that the concurring opinion interpreted the Tessler language out of context.
As the majority opinion notes, business damages are a matter of statutory largesse, see Ness Trailer Park, and arise from the lost profit-making capacity of the business caused by a taking of a portion of *1007 the property or the improvements. See LeSuer. Kendry and Mulkey provide that severance damages are generally measured by the reduction in value of whatever property remains. The Mulkey court acknowledged that in those instances where business damages are identical to severance damages, the condemnee may not receive a double recovery. 448 So.2d at 1066; Glessner.
Tessler is the seminal decision addressing the issue presented here. In that case, the county planned to construct a retaining wall in existing public right-of-way directly in front of the owners' commercial property, resulting in the blocking of all access to, and visibility of, the business from one road, a major thoroughfare. The only remaining access would be an indirect winding route of about 600 yards through a predominantly residential neighborhood. The Fourth District Court affirmed the finding of the trial court that a case of inverse condemnation had been proved because the owners were denied "suitable access" to their property as a result of the retaining wall. See 538 So.2d at 847; Palm Beach County v. Tessler, 518 So.2d 970, 972 (1988). The question presented to the Florida Supreme Court was when is a property owner entitled to compensation for loss of access to the property caused by governmental intervention, when there has been no taking of the land itself. Substantial portions of the parties' briefs in the instant case attempt to interpret what the court meant in Tessler. The Supreme Court addressed the evidentiary and procedural requirements for presenting a claim for damages caused by loss of access:
There is a right to be compensated through inverse condemnation when governmental action causes a substantial loss of access to one's property even though there is no physical appropriation of the property itself. It is not necessary that there be a complete loss of access to the property. However, the fact that a portion or even all of one's access to an abutting road is destroyed does not constitute a taking unless, when considered in light of the remaining access to the property, it can be said that the property owner's right of access was substantially diminished. The loss of the most convenient access is not compensable where other suitable access continues to exist. A taking has not occurred when governmental action causes the flow of traffic on an abutting road to be diminished. The extent of the access which remains after a taking is properly considered in determining the amount of the compensation. In any event, the damages which are recoverable are limited to the reduction in the value of the property which was caused by the loss of access.

Tessler, 538 So.2d at 849 (emphasis added). Thus, the right to be compensated through inverse condemnation for severance damages relates to instances where governmental action results in a substantial loss of access, although the property itself was not physically appropriated. Weaver Oil did not present evidence on reduction of value of the property to support a claim for severance damages. Rather, the present claim is based on the Supreme Court's point in Tessler distinguishing business damages, which "continue to be controlled by section 73.071, Florida Statutes." Id. at 849-50. I understand that language to mean that Weaver Oil's success in presenting a claim for business damages for alleged impairment of its property right of access depends on its ability to meet the statutory criteria. In Williams v. Dep't of Transp., 579 So.2d 226, 229 (Fla. 1st DCA 1991), we held that section 73.071(3) "authorizes an award of severance and business damages for a taking of less than the whole of business property." I find no inconsistency between the Tessler holding and our statement in Glessner, 203 So.2d at 335, that so long as the two types of damages are present and are legally distinguishable in a given situation, a claim for both business and severance damages can be made. Ness Trailer Park, 489 So.2d at 1181. As to the statutory requirements, the real dispute below involved whether "property" was "taken," not whether Weaver Oil is "an established business of *1008 more than 5 years' standing." Section 73.071(3)(b).
In affirming the holding that the walling off of the owners' property and the resulting circuitous alternative route amounted to a taking, the Tessler court distinguished an inverse condemnation proceeding from other condemnation proceedings:
[I]n an inverse condemnation proceeding of this nature, the trial judge makes both findings of fact and findings of law. As a fact finder, the judge resolves all conflicts in the evidence. Based upon the facts as so determined, the judge then decides as a matter of law whether the landowner has incurred a substantial loss of access by reason of the governmental activity. Should it be determined that a taking has occurred, the question of compensation is then decided as in any other condemnation proceeding.
Id. 538 So.2d at 850; see Department of Agric. & Consum. Servs. v. Mid-Florida Growers, Inc., 521 So.2d 101 (Fla.), cert. den., 488 U.S. 870, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988). Whereas the governmental body institutes the ordinary condemnation proceeding, the aggrieved property owner or interest holder brings an inverse (or reverse) condemnation proceeding. Although an owner may plead inverse condemnation as a counterclaim in a direct eminent domain proceeding to recover compensation for a taking different from, or greater than, the taking legally authorized and described in the condemnor's petition, see Fla.R.Civ.P. 1.170; Fla. Eminent Domain Pract. & Proc., § 13.32, Appellees did not pursue that option here. The issue to be determined here is whether Tessler forecloses Weaver Oil from presenting a claim for statutory business damages for alleged impairment of access, where the City's reconstruction of the traffic control island involved no taking of Appellees' land itself.
The City argues that because of the location of its reconstruction activities on existing public right-of-way on Tennessee Street, and the absence of evidence alleging that any loss of access affected Appellees' land named in the petition, the trial court erred in sending the business damages question to the jury and no basis exists for the award. We noted in Williams, 579 So.2d at 229, that "both types of damages may be based on overlapping considerations." That might explain why the present facts engendered such vigorous debate over Appellees' entitlement even to present a claim for business damages, as well as disagreement over whether the evidence presented by Weaver Oil could ever provide a basis for such an award.
Weaver Oil argues that the language from Tessler quoted in the Weggies Banana Boat concurrence must be considered in light of the fact that generally, the owner can claim damages for the value of the property taken as well as damages caused to the remaining property by the loss of the property taken. See City of Fort Lauderdale v. Casino Realty, Inc., 313 So.2d 649, 652 (Fla. 1975) (Overton, J., concurring). A relevant consideration in the instant case, however, is that Appellees' easement of access has no real value except to the extent that its presence, or lack thereof, affects the value and use of the land to which it is attached. Although access is property in a very real sense, it cannot be valued by the square foot, as can land. I are not convinced that Appellees could have foreseen the consequences of the City's Ocala Road widening project, especially the reconstruction of the curb and grass traffic control island, upon the accessibility of the westerly Tennessee Street entrance to the business.
Apparently in recognition of that fact, the Tessler court indicated that the value of access as property, when taken, is "limited to the reduction in value of the property" to which the access is attached. See Anhoco Corp. v. Dade County, 144 So.2d 793 (Fla. 1962), wherein the Supreme Court stated: "Ordinarily the measure of damages for the taking of the right of access is the difference between the value of the property with the right attached and its value with the right destroyed." See 144 So.2d at 798. Business damages were not an issue in Tessler, which arose from an inverse *1009 condemnation proceeding and involved severance damages.
Business damages are separate from the usual damages relating to the property itself. Casino Realty, 313 So.2d at 657. The statement in Tessler that "[b]usiness damages continue to be controlled by section 73.071, Florida Statutes" is not, in my opinion, an exclusion of business damages where the taking concerns a loss of access rather than land. Rather, it is merely the recognition that the owner, at a valuation trial, still has the burden of proving that the criteria set forth in section 73.071(3)(b) have been met. Tuttle v. Dep't of Transp., 327 So.2d 841 (1st DCA), aff'd, 336 So.2d 583 (Fla. 1976). That portion of Tessler on which the City here, and the concurrence in Weggies Banana Boat, rely, appears to mean that when access is taken, the constitutional "full compensation" requirement is met by the payment of the loss in value to the remaining land. The separate claim for business damages resulting from the impairment of access may be presented only when the owner establishes the statutory criteria, as I think Appellees did at trial. Appellees' interpretation of Tessler helps to elucidate the Supreme Court's comment that "[s]hould it be determined that a taking [of access] has occurred, the question of compensation is then decided as in any other condemnation proceeding." Id. at 850. In that regard, section 73.071(3)(b) specifically provides that the "compensation" to be awarded by the jury shall include the value of the property taken, damages to the remainder, and business damages.
As to the fact that the alleged impairment of access occurred within existing public right-of-way, Weaver Oil claims that fact does not preclude the finding that Appellees suffered a compensable loss of access. The Tessler court affirmed the holding that a taking of access had resulted from the county's activity occurring solely within existing right-of-way. Id. 538 So.2d at 849-50. Likewise, in Department of Transp. v. Jirik, 498 So.2d 1253 (Fla. 1986), the taking of access occurred, and the project was entirely within, existing right-of-way. See Lakewood Travel Park, Inc., 580 So.2d at 230. "[E]ven when the fee of a street or highway is in a city or a public highway agency, the abutting owners have easements of access ... from the street or highway appurtenant to their land, and unreasonable interference therewith may constitute a taking ... requiring compensation." Benerofe v. State Road Dep't, 217 So.2d 838, 839 (Fla. 1969); see Hughes v. State Bd. of Highway Dirs., 80 Idaho 286, 328 P.2d 397 (1958); Director of Highways v. Kramer, 23 Ohio App.2d 219, 262 N.E.2d 561 (Ct.App. 1970); 29A C.J.S., "Eminent Domain" § 105(2).
Ness Trailer Park arose from a condemnation proceeding. See 489 So.2d at 1173. The DOT determined that it was necessary to acquire a land parcel owned by the trailer park (Ness). Ness filed an answer claiming damages for all restrictions of "ingress and egress" as well as special damages for loss of convenient access to the remaining land, reserving the right to claim further damages and compensation. Ness claimed business damages as a result of the loss of the use of the property taken. Id. at 1174. The Fourth District Court noted that "any injury to Ness' access was not the result of a blockage occurring on the land taken from him, but of a blockage on the preexisting roadway." Id. at 1178. Severance damages were deemed to be unavailable. Counsel for the DOT contested any entitlement to business damages and, alternatively, stipulated to a certain amount if such damages were legally proper. The Fourth District Court answered, in the negative, the question of whether the trial court erred in awarding business damages, in addition to compensation for the land taken. An award for loss of rent was determined to be distinct from damages for reduced value of the remaining land, and the business damages award was affirmed. Id. at 1175, 1181. Ness Trailer Park supports the position of Weaver Oil that it could present a claim for statutory business damages for impairment of access even though the City's activities occurred beyond the physical property taken.
The City relies also on Capital Plaza, 397 So.2d at 682, in which a median separating *1010 northbound and southbound traffic was constructed within the existing right-of-way. However, nothing was constructed between the property and the abutting roadway. The owner/abutter's easement was not altered and "free unimpeded access" to the property remained. Id. at 683; Department of Transp. v. Palm Beach West, Inc., 409 So.2d 1130 (Fla. 4th DCA 1982) (erroneous instruction permitted jury to consider evidence of impairment of access to property due merely to construction of median strip).
Weaver Oil contrasts the instant facts, where the City constructed a raised barrier alleged to have significantly impaired the ability of Appellees' customers to enter the property. Under Tessler, impairment of access to an abutting road, where no land is taken, does not constitute a taking unless the property owner proves a substantial diminution of the right of access. See id. 538 So.2d at 849. Weaver Oil presented its case-in-chief on precisely that issue. That a taking occurred was, in effect, determined, as a matter of law, by the trial court when it denied the City's motion for a directed verdict. I find Appellees' distinguishing of Capital Plaza to be convincing. The evidence presented by Weaver Oil concerned more than inconvenience or a mere change in traffic flow. Cf. Capital Plaza, 397 So.2d at 683; City of Port St. Lucie v. Parks, 452 So.2d 1089 (4th DCA), pet. for rev. den., 459 So.2d 1041 (Fla. 1984).
Further, Weaver Oil argued that the damage resulting from the configuration of the traffic control island was specific in nature rather than simply a general effect upon the public at large. Anhoco Corp. The Supreme Court of Colorado has defined the property right of access as "the right of a landowner who abuts on a street or highway to reasonable ingress and egress." Department of Highways v. Davis, 626 P.2d 661, 663 (Colo. 1981). Typically, cases where impairment of access to a business is an issue should focus on whether the customers' ability to enter and exit the business property is substantially affected or impaired. Stoebuck, "The Property Right of Access Versus the Power of Eminent Domain," 47 U.Tex.L.Rev. 733, 760-61 (1969). Here, the evidence demonstrated that the impact of the government's regulatory activities on Appellees' economically viable use of the property was significant. Joint Ventures, Inc. v. State Dep't of Transp., 563 So.2d 622, 624 (Fla. 1990); Department of Highways v. Interstate-Denver West, 791 P.2d 1119, 1121 (Colo. 1990) (whether land is actually taken is immaterial to question of whether there is substantial limitation of access). That was the guiding premise of the evidence presented by Appellees. Cf. Florida Audubon Society v. Ratner, 497 So.2d 672, 676 (3rd DCA 1986), rev. den., 508 So.2d 15 (Fla. 1987) (mere incidental impairment of access rights will not sustain a claim for damages).
The City's argument is akin to the position taken by the dissenting judge in the Fourth District Court's Tessler decision. Referring to the issue of compensability for alleged damages resulting from construction by Palm Beach County in front of the owner's property, on existing public right-of-way, the writer stated:
While appellees may suffer a decline in their business as a result of the retaining wall, business damages are strictly a matter of legislative grace, not constitutional imperative. [citations omitted] There is currently no statute providing for business damages where, as in the present case, none of the business owner's property has been taken.
Tessler, 518 So.2d at 973 (Fla. 4th DCA 1988) (Dell, J., dissenting). The language of the Florida Supreme Court in the subsequent Tessler decision, affirming the majority opinion of the Fourth District Court, does not expressly preclude an owner from claiming statutory business damages for the denial of use of the property right of access, even where the owner's physical land has not been taken in that location.
I would submit that Appellees proved the City's activities on Ocala Road and Tennessee Street affected their property. Because access is defined under a standard of reasonableness, it was for the trier of fact to determine whether the impairment of access was substantial so as to constitute a *1011 taking. Stoebuck, supra, at 765. I find that competent substantial evidence demonstrates the following: 1) The main entrance to the site was the westerly one on Tennessee Street impaired by the City's project. 2) A main entrance of 40 feet or more was essential for the successful operation of a high-volume fuel retailer like Weaver Oil at that site. 3) The City's construction project reduced the main entrance by approximately 40% to a width significantly less than 40 feet. 4) The decline in customers began with the construction of the project, but even after completion of the work, the customer count continued to decline, resulting in a substantial loss of business. 5) The customer decline was the result of the impairment of access occurring at the main entrance to the site. 6) The remaining access was no longer adequate for the owner's existing use of the site. If find no abuse of discretion and, on that basis, would affirm the order of the trial order denying the City's motion for a directed verdict.
The remaining issue would be whether competent substantial evidence supports the jury verdict awarding business damages to Weaver Oil. It is clear that disputed evidence was presented at trial on the issue of whether the remaining access was suitable for the existing use of the property. The conflict regarding damages was for the jury to resolve, including a determination as to the weight and credibility of the testimony of the expert witnesses. County of Volusia v. Niles, 445 So.2d 1043 (Fla. 5th DCA 1984); Keith v. Amrep Corp., 312 So.2d 234 (Fla. 1st DCA 1975). It is not the prerogative of the reviewing court to decide which expert to believe.
Competent substantial evidence supports the jury's verdict in favor of Weaver Oil for statutory business damages, and the amount awarded is supported by the record. See Tuttle, 327 So.2d at 843. For the reasons stated above, I find that the trial court was correct in denying the City's motion for a judgment n.o.v.
NOTES
[1] Severance damages were eliminated as an issue here pursuant to the Stipulated Partial Final Judgment.